**Raymond L. TRAHANT,**
**Plaintiff–Appellant,**

v.

**ROYAL INDEMNITY COMPANY and Royal Insurance Company of America, Defendants–Appellees.**

No. 96–3086.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 28, 1997.

Decided Aug. 1, 1997.

James V. Daffada, Karacic & Daffada, James A. Roth (argued), Chicago, IL, for Plaintiff–Appellant.

Michael T. Roumell, Tracey L. Truesdale (argued), Murphy, Smith & Polk, Chicago, IL, for Defendants–Appellees.

Before CUDAHY, DIANE P. WOOD, and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

In many ways, this is a companion case to *Bahl v. Royal Indemnity Co.*, 115 F.3d 1283 (7th Cir.1997), in which this court affirmed summary judgment for Royal Indemnity and Royal Insurance Company of America (collectively "Royal") in a suit brought by Dharam V. Bahl. The plaintiff here, Raymond L. Trahant, was Bahl's supervisor at Royal. Both men were discharged by the company on the same day and both filed charges with the EEOC. In Bahl's appeal, this court concluded upon a *de novo* review of the record that Bahl had failed to show that Royal's reasons for terminating him were pretextual and that the real reason was discriminatory. Although Trahant's case was before a different district judge and a different panel of this court, the bulk of the evidence is common to both cases. Conducting the same *de novo* review of the record on Royal's motion for summary judgment, we too affirm the district court's judgment for Royal.

As the *Bahl* opinion sets forth in more detail, both Bahl and Trahant were employed in the Chicago office of Royal Indemnity, in its Royal Global division. Trahant worked there from August 1986 until his termination on April 14, 1994, at which time he was 57 years old. Trahant supervised the underwriters and other staff at the Chicago office, including Bahl, and reported to the North American Underwriting Manager in Royal Global's New York headquarters.

Trahant claims that Royal's management staff made numerous critical remarks about his age. On one occasion, when Trahant was having dinner with a group from the company in New York, Alan Driscoll, Vice President for North American Operations, and one other person wanted to "chugalug" grappa (a rather strong Italian liqueur). When

Trahant said that he did not want to drain the glass, they retorted, "Why, are you too old to handle liquor?". On another occasion, Driscoll expressed to Trahant his frustration with Royal Global's New York office and said that he was thinking about "fir[ing] the entire staff of the old international department, the underwriters." In March 1992, Trahant had dinner with Royal Global's CEO, Tom Brown. During the meal, Brown asked Trahant how old he was, and when Trahant said he was 56, Brown said "Oh, my God, another one with no place to go." Trahant also offers other examples of references to "old feet," the "old man of the group," and teaching "old dogs new tricks," all of which he believes is enough to raise a genuine issue over the question whether age-based animus lay behind his firing.

Trahant also described in detail Royal's allegedly discriminatory attitude toward Bahl, who is Asian–Indian. Shortly before joining the company, Driscoll had lunch with Trahant, Bahl, and a third person. After the lunch, Driscoll asked Trahant whether he thought Bahl was "the right person for that job for you." Trahant said yes, but that was not the end of it. A few months later, Driscoll told Trahant that he did not think Bahl was right for the job, because of his inadequacies as an underwriter. When Driscoll asked if Bahl was complying with state regulations regarding the documentation of underwriting rates for policies of $100,000 or more, Trahant admitted that compliance had once been a problem but that it no longer was.

By late 1992, Driscoll was starting to look into underwriting practices at both the Chicago and the Los Angeles offices. In September of that year he sent memoranda to both offices, directing them to bring their policy files into compliance with state regulations immediately and attaching written compliance procedures. This was followed by a November 1992 examination by Royal's Market Conduct Compliance Department into the rating and underwriting compliance practices of all the branch offices. That examination revealed frequent failures to document rate development properly. Brown, the CEO, was appalled at the poor results of the internal audit. At his request, Driscoll directed all underwriters and managers (including Trahant) to review all policy files to ensure compliance with state laws and he arranged a mandatory training seminar in February 1993, which Trahant, Bahl, and others attended.

By the end of 1993, the problem was still not solved. On one occasion that year, Joe Gray (then North American Underwriting Manager and Trahant's boss) told Trahant to manage Bahl more closely. Trahant disagreed that there was any problem with Bahl's work and thought that Gray was prejudiced against Bahl. On another occasion, Al Colosimo, who shared Gray's job, complained to Driscoll about Bahl. Driscoll then told Trahant that he should fire Bahl. Again, Trahant disagreed that Bahl was a problem. Again, in December 1993 or January 1994, Driscoll told Trahant that Bahl had to go, but Trahant refused to take any action until he had proper documentation. "Well, Ray," Driscoll replied, "the only thing I can tell you is that this has hurt you personally."

Finally, Driscoll arranged for the audit of the Chicago office described in our *Bahl* opinion. It took place between January 31 and February 4, 1994. Driscoll and John Dugan, an Underwriting Account Executive, reviewed the files from an underwriting standpoint, and Richard Ballantine, the Regulatory Compliance Division Manager, reviewed them for compliance with state law. Dugan reported that the files he saw were poorly organized, did not explain rate development adequately, and unsatisfactorily addressed reinsurance, assessment of financial management, and the identification of hazards. Driscoll, too, was highly critical. Later, Dugan tried to put a softer light on his observations, when he testified that the Chicago files were the most orderly of any in Royal Global's American branch offices (though it is hard to say whether this was a compliment or a comment on the sorry state of the other files). He also later opined that he saw nothing in the files that would jeopardize Royal's license to conduct business in the United States or any violations of Royal's own internal underwriting practices.

Whether this was Dugan's view at the time or only later, it was quite clearly not Driscoll's view. Trahant does not challenge the fact that Ballantine (who, unlike Dugan, was actually in charge of compliance) found that Bahl's files did not comply with state law on rate documentation, although Trahant makes much of the fact that the auditors did not hold an exit interview, at which he could have explained these irregularities. Instead, Trahant was given until April 1, 1994, to submit written comments detailing how he would bring the office up to an acceptable level. Trahant forwarded his response to Driscoll on March 24, 1994. Rather than confessing error, Trahant claimed ignorance on some points, indicated that some of the information thought to be missing was, in fact, in other files, and admitted that underwriting was not Bahl's "long suit." Around that time, Trahant also received his annual performance review from Gray, who rated him as "unsatisfactory" overall.

Driscoll was not pleased with Trahant's response to the audit report. He felt it showed that Trahant did not appreciate the seriousness of the problems. He was also disturbed by Trahant's earlier assurances that all compliance problems were solved, when they obviously were not. The upshot was that on April 14, 1994, Driscoll (with the knowledge and concurrence of Royal's corporate counsel) went to the Chicago office and fired both Trahant and Bahl. Driscoll said that the reasons for firing Trahant were that the audit report and Trahant's responses reflected low standards and incompetence, that Trahant's failure to comply with state documentation requirements exposed Royal to regulatory sanctions, and that the files Trahant supervised were disorganized, difficult to audit, and increased Royal's handling costs.

That day, Trahant filed his charge of age discrimination with the EEOC and the Illinois Department of Human Rights. Later, he filed an amended charge that added a retaliation claim. This lawsuit followed, with a three-count complaint claiming (1) that he was terminated on the basis of age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*,

(2) that he was entitled to liquidated damages under ADEA § 7(b) because Royal "willfully" discriminated against him on the basis of age, and (3) that he was terminated in retaliation for his refusal to discriminate against Bahl. Judge Coar granted Royal's motion for summary judgment. He found that there was "abundant evidence" that Trahant was not performing his job to Royal's satisfaction, notwithstanding Dugan's post-audit affidavit, and thus that Trahant could not satisfy the basic prima facie case under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). On the retaliation claim, he found that Trahant had produced evidence that he had engaged in protected expression by refusing to fire Bahl, but that he had not brought forward enough evidence to satisfy the causation requirement. The alleged protected conduct took place three to four months before he was terminated. Although this was about the same time as the audit was taking place, the judge thought it significant that the Los Angeles office was also being audited. Relying directly on the district court's opinion in the *Bahl case,* No. 95 C 0919, 1996 WL 101532 at *8 (N.D.Ill. Mar. 6, 1996), he found that it was just not reasonable to conclude that "because Trahant refused to terminate Bahl, this complicated set of facts was set into motion." *Trahant v. Royal Indemnity Co.,* No. 95 C 564, 1996 WL 420282 at *8 (N.D.Ill. July 25, 1996).

We of course review the district court's summary judgment de novo, taking the facts and all reasonable inferences in the light most favorable to the non-moving party. See *Plair v. E.J. Brach & Sons,* Inc., 105 F.3d 343, 346 (7th Cir.1997); *Bultemeyer v. Fort Wayne Community Schools,* 100 F.3d 1281, 1282–83 (7th Cir.1996). Even in that light, however, we agree with the district court that Trahant's claims lacked enough support to reach a jury. Trahant admits that he does not have direct evidence of age discrimination. He tries instead to show that circumstantial evidence exists that would allow an inference of intentional discrimination—essentially, circumstantial evidence of direct bias, see *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir.1994)—and also, under the *McDonnell Douglas* framework, he

**1098**

claims that Royal's reasons for discharging him were pretextual.

■ Taking the latter contention first, we reject Trahant's pretext claim for essentially the same reasons our colleagues rejected Bahl's version of this theory. Under the indirect method of proof, the plaintiff must first make out a prima facie case of discrimination before the burden shifts to the defendant to articulate a nondiscriminatory reason for the employment action. Only then does it become relevant whether the defendant's proffered reason is pretextual. The district court found that Trahant failed to raise a prima facie case of age discrimination because no reasonable jury could have found that Trahant was performing up to his employer's legitimate expectations. We agree. No matter how many thoughtless remarks were made about the "old man" and his unwillingness to chug grappa, the evidence that his performance was substandard and not improving was overwhelming. What few contradictions existed came from Trahant's own self-serving affidavits and Dugan's belated effort to put his audit conclusions in a better light. But Driscoll, not Dugan, was responsible for Trahant's performance, and it could not be plainer that the audit convinced him that Trahant had to go. In any event, we agree with the *Bahl* panel, on a functionally identical record, that Royal's reasons were not pretextual. Either way—no prima facie case, or no pretext—the district court correctly dismissed both Count I, the general ADEA claim, and Count II, the ADEA § 7(b) claim.

■ On Trahant's alternate argument that he had circumstantial evidence of a discriminatory motive, the thoughtless or mean references to his age would at most raise a question relating to mixed motives. However, it is an affirmative defense in such a case to show, by a preponderance of the evidence, that there was a wholly legitimate reason for the employment decision. See *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Therefore, even if Trahant showed that Royal demonstrated an age bias on some occasions, Royal would still be entitled to summary judgment if there were no genuine issue that it would have made the same employment decision anyway. Compare *Geier v. Medtronic, Inc.,* 99 F.3d 238, 241 (7th Cir.1996) (granting employer summary judgment on pregnancy discrimination claim), with *Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 893 (7th Cir.1996) (denying summary judgment where employer's motive was genuinely at issue). On this record, Royal has demonstrated convincingly that it would have fired Trahant no matter what his age. We also agree with the district court that the circumstances of the audit were sufficiently distinct from the comments about Trahant's age that the audit itself was not tainted by any age discrimination. See *Geier,* 99 F.3d at 242 (discriminatory comments must be contemporaneous with or causally linked to employment decision).

■ Last, we come to Trahant's retaliation case, which parallels Bahl's direct discrimination claim most closely. In order to establish a prima facie case of retaliation, the plaintiff must show that he engaged in statutorily protected activity, that he suffered an adverse employment action, and that there is a causal link between the protected expression and the adverse action. We must consider whether Trahant's refusal to terminate Bahl for what he believed were discriminatory reasons caused him to suffer an adverse employment action. Again, we agree with the district court that the answer is no. While it is true that Driscoll was disturbed by Trahant's efforts to defend Bahl's job performance and that Driscoll and others made inappropriate remarks about Bahl, Trahant was fired after the audit, and only after being given a chance to explain what he would do to bring the office into compliance. The audit itself was not an "adverse action" that would support Trahant's theory of retaliation, nor does the record otherwise show any causal link between Trahant's refusal to go along with the perceived discrimination against Bahl and his own termination.

We therefore AFFIRM the judgment of the district court.