**Nuraini B. ABIOYE, Plaintiff–Appellant,**

v.

**SUNDSTRAND CORPORATION, Defendant–Appellee.**

No. 98–1157.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1998.

Decided Dec. 28, 1998.

Rene Hernandez (argued), Belvidere, IL, for Plaintiff–Appellant.

Kearney W. Kilens (argued), McDermott, Will & Emery, Max G. Brittain, Jr., Brittain, Sledz, Morris & Slovak, Chicago, IL, for Defendant–Appellee.

Before RIPPLE, KANNE and DIANE P. WOOD, Circuit Judges.

RIPPLE, Circuit Judge.

Nuraini Abioye filed this action against Sundstrand Corporation ("Sundstrand" or "the Corporation"). He alleged that his employment was terminated because of his age, race and national origin in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA"). After striking portions of Mr. Abioye's 12(N) Statement and supporting affidavits, the district court granted Sundstrand's summary judgment motion. Mr. Abioye seeks review of these determinations. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

### BACKGROUND

#### A. Facts

Mr. Abioye, who is a black man from Nigeria and who was fifty-two at the time of his termination, began working as an engineer for the Corporation's aerospace division in 1979. In 1984, he was promoted from the position of Project Engineer II to the position of Senior Program Engineer I. In 1987, he was promoted to Senior Program Engineer II. From June 1989 to January 1990, Mr. Abioye worked on special assignment to the research department. When that assignment expired, he was transferred to the test department to work on projects that needed additional staffing. From January 1990 to September 1993, Mr. Abioye worked in the test equipment group. During that time, Mr. Abioye was assigned to work on the 777 backup project. This assignment was completed in 1992, and he was then assigned to perform day-to-day work on a variety of projects.

During the 1992–93 period, Mr. Abioye was identified as a possible candidate for layoff as part of a general reduction in force due to a slowdown in the Corporation's business. At the request of the layoff committee, one of his managers, Ray Dawson, a black man over the age of forty, attempted to assist Mr. Abioye in obtaining a transfer to the electric power group. Ron Peterson, director of engineering at that time, stated that he had no openings, and he questioned whether Mr. Abioye had the skills necessary for the transfer.

In June 1993, two of Mr. Abioye's managers, Barry Mendeloff and Doug Rinker, reviewed Mr. Abioye's performance. They then told Mr. Abioye that he needed assignments outside of the test equipment group to continue performance at the Senior Engineer II level and that they were working with the human resources department to secure such opportunities for him. They also informed him that, if he was not transferred, he was in danger of being terminated. The review further advised Mr. Abioye that his mix of technical knowledge and skills did not meet the requirements for a Senior Engineer II in test equipment and that he needed to improve his performance. Notably, Mr. Abioye did not dispute the assessment of these managers. During a discussion of the review, Rinker and Mendeloff told Mr. Abioye that they were trying to place him in the electric power department because of his work experience. Mr. Abioye agreed with this course of action and expressed a desire to transfer to electric power.

Despite the facility-wide downsizing then in progress, efforts continued to find a place for Mr. Abioye in electric power and Mr. Abioye continued to express an interest in such a placement. Finally, in September 1993, Mr. Abioye was transferred into the motor generator engineering group, which George Seffernick managed and which was a subgroup of the electric power group. Seffernick viewed Mr. Abioye as technically weak and in need of work to regain skills. Seffernick told Mr. Abioye that he would need to work hard to keep up with assignments.

Mr. Abioye's first assignments were on the AWACS program and the F22 program. Seffernick received feedback from internal customers and from project managers who supervised Mr. Abioye about concerns with his level of performance. Seffernick had several discussions with Mr. Abioye about his performance throughout 1994. According to Seffernick, Mr. Abioye reacted negatively to this criticism when it was conveyed to him. In June 1994, Seffernick rated Mr. Abioye's performance as a 2 ("met some commitments") on a scale of 1 to 5. Mr. Abioye, upon receiving the evaluation, stated that Seffernick was not qualified to evaluate him.

During 1994, Seffernick also discussed with Virginia Dunkle of Sundstrand's human resources department ways to help Mr. Abioye bring his skills up to department expectations. In January 1994, Seffernick assigned Jay Vaidya to mentor Mr. Abioye, and assigned Mr. Abioye to help Vaidya in a design program. After completion of the program, Mr. Abioye prepared a report for marketing. Seffernick found the report to be undecipherable. He then asked a more senior engineer to evaluate the report and met with that evaluator and Mr. Abioye in an effort to improve the product. Mr. Abioye was still unable to prepare an acceptable report. After another assignment resulted in unacceptable performance, Seffernick assigned Mr. Abioye to create a flow chart of the generator process in an effort to improve his basic design skills.

In late 1994, after compiling performance evaluations and facing the need to find assignments for Mr. Abioye, Seffernick recommended to the director of engineering that Mr. Abioye be considered for layoff or transfer because his performance was unsatisfactory and because his skills were not compatible with those of the department. Consequently, in February 1995, Seffernick discussed Mr. Abioye's past performance with a layoff review panel and with the director of engineering, George Sorensen. This panel, consisting of Seffernick, Sorensen and several members of the human resources department, including a vice-president, reviewed management's expectations and Mr. Abioye's work performance. It also considered Mr. Abioye's past accomplishments and performance appraisals and examined alternatives for transfer or reassignment. After this evaluative process, Sorensen made the final decision to terminate Mr. Abioye on the ground that he lacked the technical capacity to perform the job.

## B. Proceedings in the District Court

The district court struck parts of Mr. Abioye's statement as well as the affidavits of Vaidya and Alex Krinickas, who was Mr. Abioye's supervisor before Mr. Abioye joined Seffernick's group. It then granted summary judgment to the Corporation. The court held that Mr. Abioye had not demonstrated that he was meeting the Corporation's legitimate expectations. Therefore, he had not established a prima facie case under the *McDonnell Douglas* methodology. The court relied on the evaluation of Mr. Abioye's abilities by Seffernick and Sorensen. The court noted that Mr. Abioye's past performance evaluations and evaluations by Vaidya and Krinickas could not establish his competency at the time of his discharge. Additionally, his own statements regarding his competency were entitled to no weight. Finally, the court also noted briefly that there was no evidence of pretext in this case.

## II

## DISCUSSION

### A.

■ Mr. Abioye submits that the district court should not have stricken parts of the

affidavits of himself, Vaidya and Krinickas. He alleges that the excluded evidence demonstrates that the process utilized to evaluate his performance was different from the process used to evaluate white employees; that young, white engineers were brought in to replace him; that a white engineer had failed on a major project without reprimand; and that engineers in other groups received reassignment to their prior groups more easily than Mr. Abioye.

We review a district court's decision to strike portions of summary judgment affidavits for an abuse of discretion. *See Whitted v. General Motors Corp.*, 58 F.3d 1200, 1203 (7th Cir.1995). Although our review would have been aided by a more plenary explanation by the district court, our own review of the record allows us to conclude that there was no abuse of discretion here. The court's decision to strike these statements was not irrational or unreasonable. In particular, we note that conjecture or speculation regarding the employer's motives cannot be used to defeat a summary judgment motion; affidavits must be based on personal knowledge. *See Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337 (7th Cir.1991); *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659–60 (7th Cir. 1991) (en banc); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1571–72 (7th Cir.1989). Here, none of the conclusory statements made by the affiants demonstrated, with sufficient particularity, that they actually knew whether younger, white employees were treated better than Mr. Abioye; their statements were merely conjecture based on rumor. In any event, even if the district court parsed the affidavits too aggressively, that error was harmless because, as will be more fully discussed below, the stricken evidence was not sufficient to show that Sundstrand's explanation for terminating Mr. Abioye—his poor performance—was pretextual.

### B.

Mr. Abioye next contends that the district court erred in holding that he did not establish a prima facie case under *McDonnell Douglas*. More specifically, he argues that he was meeting the legitimate expectations of Sundstrand Corporation. He cites the affidavits of Vaidya and Krinickas, who were his co-workers at Sundstrand, to support his argument. Both of these co-workers state in their affidavits that Mr. Abioye was performing his job well. Because Vaidya had served as his mentor and project supervisor, Mr. Abioye claims Vaidya's evaluation is superior to that of Seffernick.

Although the district court granted summary judgment by concluding that Mr. Abioye was not meeting the performance expectations of his employer, we think that a more surefooted ground for decision is the lack of any pretext in the Corporation's articulated reason for the termination. No matter how one might construe the affidavit of Vaidya, the district court correctly concluded that there is no evidence that Sundstrand's explanation for terminating Mr. Abioye's employment was pretextual. When the defendant has proffered an explanation for termination that the court determines to be nonpretextual, the court may avoid deciding whether the plaintiff has met his prima facie case and instead decide to dismiss the claim because there is no showing of pretext. *See Equal Employment Opportunity Comm'n v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 149–50 (7th Cir.1996).

In demonstrating pretext, a plaintiff must show more than that the employer's decision was incorrect; the plaintiff must also show the employer lied about its proffered explanation. *See Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir.1995). Even an employer's erroneous decisionmaking, exhibiting poor business judgment, is not sufficient to establish pretext. *See Richter v. Hook–SupeRx, Inc.*, 142 F.3d 1024, 1031–32 (7th Cir.1998).

This court has applied these principles to a case with facts similar to this one. *See Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1291–92 (7th Cir.1997). In *Bahl*, the employer alleged that it terminated the plaintiff because of poor performance. The plaintiff, citing a supervisor's complimentary review of the plaintiff's performance, responded that the explanation was pretextual. This court held that the supervisor's review did not create an

issue of triable fact that the employer's proffered explanation was a lie. The issue was whether management honestly held its views, not whether it was mistaken.

Similarly, in this case, the affidavits of Mr. Abioye's mentor, Vaidya, and prior supervisor, Krinickas, do not establish an issue of triable fact that Sundstrand's explanation is pretextual. Sundstrand .management found Mr. Abioye's work to be unsatisfactory; the fact that Vaidya thought that Mr. Abioye's work was satisfactory cannot establish that Sundstrand management's subjective explanation was a fabrication. There is absolutely no evidence to indicate that Seffernick or Sorensen were lying about their estimation of Mr. Abioye's abilities. Indeed, the evidence demonstrates that Sundstrand management had a strong basis for believing Mr. Abioye was not performing well: Evaluations and comments by various supervisors indicated that Mr. Abioye's work was inadequate, and Seffernick himself had worked with Mr. Abioye to revise an unsatisfactory report that Mr. Abioye had written. Furthermore, management attempted to accommodate Mr. Abioye's lack of proficiency by transferring him and providing him with a mentor. Finally, the entire matter of Mr. Abioye's performance had been analyzed before a panel drawn not only from those who had worked with Mr. Abioye, but also from the human resources department. This evidence hardly supports the inference that the termination was pretextual and that Sundstrand management did not actually believe Mr. Abioye was a poor performer.[1]

## C.

■ Mr. Abioye also contends that the district court should have evaluated this summary judgment motion under a "mixed motives" framework rather than the *McDonnell Douglas* framework.[2] Under the mixed motives approach to discrimination cases, a plaintiff may rely on either direct or circumstantial evidence to establish discriminatory intent. *See Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1140 (7th Cir.1997). The defendant employer may then avoid a finding of liability by proving that it would have made the same decision even if the plaintiff was not of a certain race or above a certain age. *See id.*

■ Utilization of a mixed motives approach would not alter the result in this case. At the outset, as in *Gleason*, we do not believe that the evidence of record will support a determination that there is sufficient evidence, direct or circumstantial, of a mixed motive in this case. In any event, as in *Trahant v. Royal Indemnity Co.*, 121 F.3d 1094 (7th Cir.1997), it is clear that, even if we were to assume some evidence of the existence of an impermissible motive, the evidence of a "wholly legitimate reason for the employment decision" is overwhelming. *Id.* at 1098. The Corporation would still be entitled to summary judgment because there is no genuine issue regarding whether it would have made the same employment decision anyway. The evidence strongly establishes that Sundstrand management believed that Mr. Abioye was not qualified to continue working for Sundstrand. Sundstrand had attempted, persistently, to assist Mr. Abioye in improving his performance and in finding a position that suited his abilities. He was terminated only after the process of evalua-

---

1. Mr. Abioye contends that he was required to take an examination concerning his engineering abilities under conditions different from those imposed on other employees. Although the treatment of this issue by the district court and the parties is decidedly cryptic, we have examined thoroughly the record and do not believe that this episode raises a genuine issue of triable fact with respect to the issues of pretext, or, indeed, of mixed motives. The record does not support, in any manner, that an impermissible motive prompted the administration of the test. Moreover, when Mr. Abioye complained to management about the circumstances of administration, the test was nullified by the Corporation. Under these circumstances, the administration of the test would not support a jury verdict of discrimination.

2. Alternatively, Mr. Abioye argues that this court should not apply the *McDonnell Douglas* framework to ADEA claims. However, it is well settled that the *McDonnell Douglas* framework applies to such claims. *See, e.g., Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1140 (7th Cir.1998) (applying the *McDonnell Douglas* framework to an ADEA claim). Mr. Abioye offers no alternative mode of analysis and provides no satisfactory argument why this court should abandon prior precedent.

tion and search for alternative placement failed to yield a suitable result. The Corporation "has demonstrated convincingly," *id.*, that it would have terminated Mr. Abioye no matter what his age, race, or national origin.

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.