Curtis SAUZEK and Julian Koski, Plaintiffs–Appellants,

v.

EXXON COAL USA, INC., Defendant–Appellee.

No. 98–3119.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1999

Decided Feb. 2, 2000

Andrea L. Wirth (argued), Wirth & Heise, Belleville, IL, for Plaintiffs–Appellants.

Edward S. Bott, Jr. (argued), Thompson Coburn, Belleville, IL, for Defendant–Appellee.

Before BAUER, RIPPLE, and DIANE P. WOOD, Circuit Judges.

BAUER, Circuit Judge.

Curtis Sauzek ("Sauzek") and Julian Koski ("Koski") (collectively, "plaintiffs") sued their former employer, Exxon Coal USA, Inc. ("Exxon"), alleging that Exxon violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Plaintiffs claim that Exxon laid them off, failed to transfer them, and refused to rehire them because of their age. Sauzek and Koski also charge that Exxon's failure to rehire them constituted retaliation for their administrative complaints of age discrimination. The district court awarded summary judgment to Exxon on the retaliation claim, but allowed the other claims to proceed. Shortly before trial began, the district court granted Exxon's motion *in limine* to preclude any evidence regarding Exxon's failure to transfer plaintiffs to different jobs. Then, during trial, the district court granted summary judgment for Exxon on plaintiffs' failure to rehire claim. At the conclusion of a five-week trial, the jury sided with Exxon on plaintiffs' remaining claim and found that Exxon had not terminated plaintiffs because of their age. Plaintiffs moved for a new trial, contesting these and several other rulings, which the district court denied. Sauzek and Koski now appeal. For the following reasons, we affirm.

## I. BACKGROUND

Exxon operated two coal mines in southern Illinois until a contract dispute with a major customer forced the company to close one of the two coal mines and lay off most of that mine's employees as part of a reduction in workforce ("RIF"). Since Exxon was closing one of its two coal mines and laying off so many workers, Exxon also decided to perform a company-wide reorganization of its operations. Faced with the need to restructure its organization and lay off hundreds of workers, Exxon had to decide what criteria it would use to select the employees that would be retained and those who would be terminated. Exxon ultimately opted to use employee performance ratings as the standard by which to make the decision.

The system Exxon uses to measure employee performance assigns each employee an annual Rank Group Percentile ("RG%"). To calculate an employee's RG% for a given year, that employee's supervisor evaluates the employee's work performance relative to other employees in the same or similar positions. In other words, the RG% that each employee receives depends on the quality of that individual's own work performance during that year and how that performance compared to the performance of other employees doing the same job. Under this ranking system, the employee in a designated position with a RG 100% would be considered the best employee in that position, while a worker doing the same job with a RG 1% would be considered the poorest performer in that position.

To determine which Exxon employees would be terminated during the RIF, a committee of six managers attended a

weekend-long meeting in February 1993. At this meeting, the committee established guidelines to evaluate candidates for available jobs at the newly-restructured Exxon. Rather than assess each candidate's performance over the employee's entire career with Exxon, the committee decided to fill the available jobs by looking only at each candidate's performance ranking from the previous year. Thus, Exxon decided to keep only those employees with the highest RG% for the year 1992. The committee decided to use the 1992 RG% rankings because those performance ratings had been prepared before the supervisors knew that Exxon would have to close the coal mine and lay off so many workers. Exxon's RIF became effective in March 1993 when it closed the mine and laid off about 350 employees with the lowest RG% for the previous year.

As a part of the March 1993 RIF, Exxon terminated plaintiffs Sauzek and Koski. By the time of the RIF, Sauzek and Koski had both worked for Exxon for more than 20 years and both had worked in a variety of jobs. When they were terminated, both Sauzek and Koski were working as underground front line supervisors in the coal mine that Exxon closed. Sauzek was 48 years old at the time and Koski was 52. Sauzek's 1992 performance evaluation had given him a RG 17% and Koski's 1992 evaluation ranked him the worst in his group at RG 1%. None of the front line supervisors that Exxon retained after the RIF had a lower RG% than Sauzek or Koski. In fact, of the front line supervisors that survived the RIF, the lowest RG% among them was 39%.

Shortly after the RIF, Sauzek, Koski, and 22 other terminated Exxon employees filed charges of employment discrimination with the EEOC. In their administrative charges, Sauzek and Koski alleged that Exxon had both terminated them and denied them transfers because of their age.

A few months after the RIF and corporate restructuring (and after Sauzek and Koski had filed their EEOC charges), Exxon prevailed in its contract dispute and re-opened the coal mine in August 1993. As a result of the mine re-opening, Exxon recalled many, but not all, of the workers it had laid off in the March 1993 RIF. Exxon did not rehire all of its employees because its newly-restructured organization required fewer workers. When deciding which employees to rehire, Exxon considered an employee's RG%, prior job experience, and any special skills that the employee had. Plaintiffs Sauzek and Koski were not rehired.

About a year after Exxon re-opened the mine and refused to rehire either Sauzek or Koski, plaintiffs filed new charges of discrimination with the EEOC on August 30, 1994. These new EEOC charges were identical to their original charges except the new EEOC charges added a claim of retaliation. According to Sauzek and Koski, Exxon knew that they filed charges of age discrimination and helped other terminated employees file their own charges of employment discrimination with the EEOC after the March 1993 RIF. Sauzek and Koski's new claim asserted that Exxon retaliated against them by refusing to rehire them when Exxon re-opened the mine.

Sauzek and Koski eventually filed a lawsuit in federal district court. Plaintiffs' First Amended Complaint alleged that Exxon violated the ADEA by (1) terminating them because of their age; (2) refusing to transfer them to different jobs during the RIF because of their age; (3) refusing to rehire them during the recall because of their age; and (4) retaliating against them for filing their own EEOC charges of discrimination and organizing other terminated employees to do the same. The district court granted summary judgment in Exxon's favor on plaintiffs' retaliation claim, but allowed the other three claims to go to trial. Before trial, Exxon moved to preclude plaintiffs from presenting any evidence relating to their failure to transfer claim and the district court granted the motion. Then, during plaintiffs' case, the district court granted summary judgment

in Exxon's favor on plaintiffs' claim that Exxon refused to rehire them because of their age. Finally, at the close of the five week trial, the jury found in Exxon's favor on plaintiffs' remaining claim that Exxon had terminated them because of their age. Plaintiffs filed a motion for a new trial which raised two dozen alleged mistakes by the district court. Judge Mills found all 24 arguments unpersuasive and denied the motion. Sauzek and Koski now appeal.[1]

## II. ANALYSIS

### A. Retaliation Claim

■ Plaintiffs first challenge the district court's decision granting Exxon summary judgment on their claim that Exxon violated the ADEA by retaliating against them for filing charges of age discrimination and for encouraging their co-workers to complain of alleged discrimination. We review the district court's grant of summary judgment *de novo*, view the relevant facts in the light most favorable to plaintiffs, and draw all reasonable inferences in plaintiffs' favor. *Trahant v. Royal Indem. Co.*, 121 F.3d 1094, 1097 (7th Cir.1997).

■ The ADEA makes it unlawful "to discriminate against any individual ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). To establish a *prima facie* case of retaliation, plaintiffs must show evidence from which a reasonable jury could find that (1) plaintiffs engaged in statutorily protected activity; (2)they suffered an adverse employment action; and (3) there is a causal connection between plaintiffs' protected activity and Exxon's decision not to rehire them. *See Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 397 (7th Cir.1998); *Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304,

1309 (7th Cir.1997). While the *McDonnell Douglas* burden-shifting framework applies to retaliation claims under the ADEA, *Vanasco v. National–Louis Univ.*, 137 F.3d 962, 968 (7th Cir.1998), we need not proceed with the last two steps of that analysis because the district court concluded that plaintiffs failed to establish a *prima facie* case of retaliation. Specifically, Judge Mills found that plaintiffs did not provide sufficient evidence to reasonably conclude that there was a causal link between the plaintiffs' EEOC charges and Exxon's refusal to rehire Sauzek and Koski.

■ To demonstrate the requisite causal connection in a retaliation claim, plaintiffs must show " 'that the protected activity and the adverse action were not wholly unrelated.' " *Hunt–Golliday v. Metropolitan Water*, 104 F.3d 1004, 1014 (7th Cir.1997) (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.1985)). Speculation based on suspicious timing alone, however, does not support a reasonable inference of retaliation; instead, plaintiffs must produce facts which somehow tie the adverse decision to the plaintiffs' protected actions. *Stagman v. Ryan*, 176 F.3d 986, 1001 (7th Cir.1999); *Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1179 (7th Cir.1998). The mere fact that one event preceded another does nothing to prove that the first event caused the second. *Bermudez*, 138 F.3d at 1179. Rather, other circumstances must also be present which reasonably suggest that the two events are somehow related to one another.

■ Here, plaintiffs simply assert that the three month time span between the date they filed their first EEOC charges of age discrimination and the date when Exxon began making recall decisions illustrates that Exxon retaliated against them for engaging in protected activity. Plaintiffs do not cite any evidence that connects

1. Plaintiffs assert 15 separate grounds for reversal. Of these 15 arguments, we will discuss only four. We have considered plain-

tiffs' remaining 11 arguments and find them without merit.

Exxon's refusal to recall them to their filing of EEOC charges or encouraging other terminated employees to also file charges. Additionally, the record indicates that of the 24 terminated employees that filed charges of discrimination, Exxon recalled 13 when it re-opened the mine. This fact shows that Exxon did not retaliate against individuals who had filed EEOC charges during the rehiring process. Because plaintiffs have shown no evidence other than the three month gap between their EEOC charges and Exxon's decision not to rehire them, one could not reasonably conclude that the two events are causally related to one another.[2] We therefore find that summary judgment in Exxon's favor on this claim was appropriate.

### B. Motion *in Limine* on Failure to Transfer Claim

 Shortly before trial began, the district court granted Exxon's motion to preclude plaintiffs from presenting any evidence that Exxon discriminated against them when it failed to transfer them to other jobs during the RIF. Like all evidentiary issues, we review this ruling on a motion *in limine* for abuse of discretion. *Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 852 (7th Cir.1998); *Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 966–67 (7th Cir.1996).

 In support of the district court's exclusion of the evidence, Exxon is quick to point out that "the ADEA does not mandate that employers establish an interdepartmental transfer program during the course of a RIF; an employer incurs no duty to transfer an employee to another position when it reduces its workforce for economic reasons." *Taylor v. Canteen Corp.*, 69 F.3d 773, 780 (7th Cir.1995). On this point, Exxon is absolutely correct. However, we also noted in *Taylor* that "an employer implementing a RIF may not

favor younger employees over older ones by finding new positions only for younger employees." *Id.* We have therefore held that in order to be probative of an intent to discriminate, evidence of failure to transfer must include proof that the employee was qualified for and applied for specific jobs that were available during the RIF. *Id.* at 781–82. To demonstrate that a failure to transfer was discriminatory, "an employee must do more than show a general interest in obtaining some job." *Id.* at 781.

 In this case, the district court properly excluded the proffered evidence of a failure to transfer. Plaintiffs offered no evidence of available jobs for which they were qualified and specifically applied. Plaintiffs simply expressed a general interest in being transferred instead of fired during the RIF. This is not enough. Surely, every one of the 350 employees who lost his or her job as a result of this RIF would have preferred a transfer over a termination. However, a general desire to receive a transfer rather than a pink slip does not establish a discriminatory motive by the employer. Additionally, as Exxon highlights, the only positions available during the RIF were at a separate corporation that happened to be affiliated with Exxon. Plaintiffs offered no proof that their supervisors and managers had any authority over hiring decisions at those other companies. Thus, even if they were denied jobs at the Exxon-affiliated companies because of their age, plaintiffs failed to demonstrate that Exxon is the appropriate party to be held liable for that discrimination. We therefore find that the district court did not abuse its discretion by excluding evidence of Exxon's failure to transfer plaintiffs.

---

2. Plaintiffs also claim to have direct evidence that Exxon retaliated against them when it refused to recall them. We have reviewed the evidence referred to by plaintiffs and find that it is not direct evidence of discrimination. In fact, after reviewing the cited portions of deposition testimony, we find plaintiffs' biased interpretation of this evidence to be creative, at best.

### C. Failure to Rehire Claim

Plaintiffs also alleged that Exxon violated the ADEA by refusing to recall them because of their age. During trial, the district court granted summary judgment in Exxon's favor on the failure to rehire claim when the court discovered that plaintiffs did not include this allegation in either of their EEOC charges. Citing the rule that plaintiffs must first include an allegation in an EEOC charge before they can advance that claim in a subsequently filed judicial complaint, *see Weiss v. Coca–Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir.1993), the court reasoned that summary judgment in Exxon's favor was appropriate because plaintiffs never complained in an EEOC charge that Exxon's failure to rehire them constituted age discrimination. We review this issue *de novo* and agree with the trial court.

As a general rule, any claim that an ADEA plaintiff wishes to pursue in federal court must first be presented to the EEOC. *See Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994) (Title VII case). This rule is designed to give the employer "some warning of the conduct about which the employee is aggrieved, and it affords the [EEOC] and the employer an opportunity to attempt conciliation without resort to the courts." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir.1992). We have, however, recognized an exception to this general rule. If a claim not asserted in an EEOC charge is "reasonably related" to a claim that was included in the EEOC charge, the plaintiff may pursue that claim in court. *Cheek*, 31 F.3d at 500; *see also Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir.1985). We have held that a claim in a judicial complaint is reasonably related to an EEOC charge "if the claim in the complaint can reasonably be expected to grow out of an investigation of the allegations in the charge." *Cheek*, 31 F.3d at 500.

Plaintiffs argue that their failure to rehire claim was reasonably related to their termination claim, but our case law in this area dooms plaintiffs' argument. In *Oxman v. WLS–TV*, 12 F.3d 652, 660–61 (7th Cir.1993), we held that a failure to rehire claim is not reasonably related to a previously filed EEOC charge alleging a discriminatory termination. The reason for this is simple: an employer's decision to terminate a worker is a separate and distinct act from a subsequent decision not to rehire that employee during a recall. Because these two employment decisions are wholly independent, they cannot be reasonably related to one another. *See Hargett v. Valley Federal Sav. Bank*, 60 F.3d 754, 764 (11th Cir.1995). An EEOC charge alleging age discrimination in a termination alerts neither the EEOC nor the employer that a charge of discriminatory failure to rehire maybe forth coming. Thus, to properly maintain both a termination claim and a failure to rehire claim, plaintiffs must include both allegations in charges with the EEOC.

In this case, plaintiffs' two EEOC charges alleged that Exxon (1) terminated plaintiffs because of their age; (2) denied plaintiffs transfers because of their age; and (3) retaliated against them for filing their first charge of discrimination with the EEOC. The only mention of Exxon's failure to rehire plaintiffs in either of their EEOC charges came exclusively in the context of their retaliation claim. That is to say, plaintiffs alleged that Exxon refused to rehire them in retaliation for filing administrative charges against Exxon and organizing others to do the same. Plaintiffs did not contend in their EEOC filings, as they did in their federal lawsuit, that Exxon failed to rehire them because of their age. Since plaintiffs never asserted this basis for relief in their EEOC charges, and it is not reasonably related to any of the claims that they did raise in their administrative charges, the district court properly granted Exxon judgment as a matter of law on this claim. Even if plaintiffs had included their failure to rehire claim in their second administrative charge, it would have been barred by the ADEA's statute of limitations. *See* 29

U.S.C. § 626(d)(2); *Hamilton v. Komatsu Dresser Indus.*, 964 F.2d 600, 603 (7th Cir.1992). Plaintiffs did not file their second EEOC charge until more than one year after Exxon refused to rehire them and therefore clearly exceeded the ADEA's 300 day limitation period.[3]

### D. Jury's Verdict on Termination Claim

After a five-week trial, the jury returned a verdict in Exxon's favor on plaintiffs' remaining claim that they were terminated during the RIF because of their age. After receiving the unfavorable verdict, plaintiffs moved for a new trial. One of the arguments plaintiffs raised in their motion for a new trial was that the jury's verdict was against the manifest weight of the evidence. The district judge denied this motion and plaintiffs now challenge that ruling.

▮▮▮▮ Plaintiffs bear a "particularly heavy burden in convincing us that the district court should have granted a new trial." *Lowe v. Consolidated Freightways of Delaware, Inc.*, 177 F.3d 640, 641 (7th Cir.1999). A motion for a new trial may be granted only when the verdict is against the manifest weight of the evidence. *Id.* Our review of the district court's ruling is deferential, *American National Bank & Trust Co. v. Regional Transp. Auth.*, 125 F.3d 420, 431 (7th Cir. 1997), and we will reverse only if we find that the trial court abused its discretion in denying the motion. *Riemer v. Illinois Dept. of Transp.*, 148 F.3d 800, 806 (7th Cir.1998).

▮▮▮ Plaintiffs insist that the jury's verdict is against the manifest weight of the evidence because Exxon's claim that it ter-minated plaintiffs because of their low RG% rankings was untrue. Plaintiffs claim that the RIF was just a pretext to get rid of the older employees. According to plaintiffs, the evidence showed that Exxon intentionally manipulated employees' RG% to terminate older employees and retain younger employees. In support of this argument, plaintiffs point out that Sauzek's and many of the older employees' RG% dropped drastically in the years just before the March 1993 RIF.

When viewed as a whole, we find that the evidence at trial was more than ample to support the jury's verdict on plaintiffs' termination claim. When Exxon began laying off employees during the RIF, plaintiffs were two of 89 front line supervisors. During the RIF, Exxon laid off 48 of those supervisors and retained 41 after the reorganization. Of the 41 front line supervisors that were retained, 30 of them were above the age of 40 and only 11 were below age 40. Additionally, a careful review of the 1992 RG% ratings used to select employees for termination during the RIF demonstrates that the rankings were not unusually harsh on the older employees. For example, 16 employees over the age of 40 were ranked in the top 25% of all front line supervisors. Conversely, several younger employees under the age of 40 received very low RG% ratings. After evaluating the RG% ratings as a whole, we find the jury's conclusion that those rankings were not manipulated to discriminate against older employees completely reasonable.[4]

The evidence also showed that older and younger employees alike experienced drastic upward and downward swings in their RG% ratings from year to year. For example, from 1990 to 1991, 46–year–old

---

**3.** In a last ditch effort to win a reversal on this issue, plaintiffs contend that they were unfairly surprised by the statute of limitations issue. This argument totally lacks merit. Exxon asserted the statute of limitations as an affirmative defense in its Answer to plaintiffs' Amended Complaint years before the trial. The record also establishes that the parties litigated this issue immediately before trial and the district court held that Exxon could raise the statute of limitations at trial.

**4.** We also note that the 1992 RG% numbers used to select employees for termination were created *before* Exxon knew there would be a RIF in March 1993. This fact seriously undermines plaintiffs' contention that Exxon manipulated the numbers to eliminate older employees.

Richard Jones' rank increased from 15% to 86%. Similarly, 59–year–old Robert Thorson's rank jumped from 29% to 60% in 1992. Front line supervisor Daniel Karrick, age 56, had a rank of only 50% in 1991, but that increased to 71% in 1992. Julius Banal, age 53, experienced an increase in rank from 46% in 1991 to 70% in 1992. Meanwhile, several front line supervisors who were younger than plaintiffs were suffering severe drops in their RG% ratings. Thomas Huels, who was 35, experienced a drop from 78% in 1991 to 1% in 1992. Likewise, 37–year–old Ollie Cox's RG% fell from 97% to 40% and 38–year–old Edward Hainaut's rating plummeted from 67% in 1991 to only 32% in 1992. Based on these fluctuations in performance evaluations for younger and older employees alike, the jury had more than sufficient basis to conclude that Exxon's RIF was not a pretext for an intent to terminate older employees.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.