**Jibade Anthony BAKER, Plaintiff,**

v.

**INDIANA FAMILY & SOCIAL SERVICES ADMINISTRATION, Defendant.**

**No. IP 02–1172–C–B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 29, 2003.

---

Swaray E. Conteh, The Law Office of Swaray E. Conteh, Indianapolis, IN, for Plaintiff.

Patricia O. Grow, Loralei C. Lannan, Office of the Attorney General, Indianapolis, IN, for Defendant.

### ENTRY GRANTING DEFENDANT'S MOTION TO DISMISS

BARKER, District Judge.

This matter comes before the Court on Defendant's motion to dismiss Plaintiff's claims of national origin discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended, and claims of race and national origin discrimination under 42 U.S.C. §§ 1981 and 1983. Defendant, Indiana Family and Social Services Administration, contends that Plaintiff, Jibade Anthony Baker, has failed to state a Title VII national origin claim because Plaintiff's Equal Employment Opportunity Commission charge did not allege national origin discrimination. Further, Defendant contends that Eleventh Amendment sovereign immunity bars Plaintiff's §§ 1981 and 1983 claims and also that Plaintiff's § 1983 claims are barred because state entities are not "persons" for purposes of § 1983. For the reasons set forth below, we *GRANT* Defendant's Motion to Dismiss.

### Factual Background

Jibade Anthony Baker ("Baker") is a Black, male citizen of Nigeria who currently resides, and during the period of the complaint resided, in Indianapolis, Indiana. Compl. ¶¶ 5, 8–20. Indiana Family and Social Services Administration ("FSSA") hired Baker in 1994 to work in the Division of Financial Enhancement ("DFE") and later gave him a supervisory role. *Id.* ¶ 10. Around 1997, DFE Director Ken Reilly ("Reilly") advised Baker and senior management that he would be leaving his position. *Id.* ¶ 11. Reilly advised Plaintiff to learn the duties of DFE director, indicating that Plaintiff would become the DFE director upon his, Reilly's, departure. *Id.* However, Reilly was told that his suggestion to Baker was not proper, and FSSA, according to state policy,[1] immediately posted the position of DFE director in the State's job bank. *Id.* ¶ 12. Baker applied for the position, and although he was one of two finalists, FSSA offered the position to Richard Hunter ("Hunter"), an African–American. *Id.* ¶ 13.

---

1. Ind.Code Ann. § 4–15–2–1 (2002).

FSSA terminated Hunter shortly after appointing him because he was unable to perform the duties for which he was hired. *Id.* ¶ 14. Thereafter, FSSA appointed Carl Hoffman ("Hoffman"), a Caucasian, as acting DFE director, even though Baker, one of the former finalists for the position, was still employed in the division. *Id.* While acting as DFE director, Hoffman allowed Baker to supervise the division because, according to Plaintiff, Hoffman had no accounting, management, or supervisory experience. *Id.* ¶¶ 14, 15. Meanwhile, FSSA again placed the DFE director position in the State's job bank. *Id.* ¶ 16. Baker applied for the position again, as did Hoffman, and both were selected as finalists. Hoffman was offered the position. *Id.*

Hoffman again allowed Baker to supervise the division. *Id.* ¶ 17. During this time, an unidentified individual named Jim Mooney made a derogatory comment about Baker to Hoffman, asking why Hoffman was "allowing the nigger to run the place." *Id.* For reasons not enumerated in the complaint, FSSA subsequently forced Hoffman to resign as DFE director. *Id.* ¶ 18. Baker alleges that, at this point in time, he could have become acting director. *Id.* He also makes a separate claim that, in December 2001, he applied for an "Accountant I" position within FSSA, but that the position was offered to an allegedly less qualified Caucasian applicant. *Id.* ¶ 20.

Baker filed a timely charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC") and received his Notice of Right to Sue on or about April 30, 2002. *Id.* ¶ 3. On July 2, 2002, Baker filed a complaint in this court, claiming that: (1) FSSA intentionally eliminated DFE to prevent him from becoming its director; (2) when FSSA eliminated DFE, it failed to offer him a promotion equivalent to the eliminated position solely because of his race and national origin; and (3) FSSA had, since 1994, continuously denied him promotion to DFE director because of his race and national origin. *Id.* ¶¶ 18–20.

### Legal Analysis

#### A. Motion to Dismiss Standard

A party moving for dismissal under Rules 12(b)(1) and 12(b)(6) must show that "the pleadings themselves fail to provide a basis for any claim for relief under any set of facts." *Owner–Operator Indep. Drivers Ass'n v. Mayflower Transit, Inc.,* 161 F.Supp.2d 948 (S.D.Ind.2001), quoting *Ed Miniat, Inc. v. Globe Life Ins. Group Inc.,* 805 F.2d 732, 733 (7th Cir.1986); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Under this analysis, we examine only the sufficiency of the complaint, not the merits of the lawsuit. *Autry v. Northwest Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir. 1998). Dismissal is appropriate only if it appears to a certainty that the plaintiff cannot establish any set of facts that would entitle him to the relief sought. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Mosley v. Klincar,* 947 F.2d 1338, 1339 (7th Cir.1991). In applying this standard, we treat all well-pleaded factual allegations as true and we construe all inferences that reasonably may be drawn from those facts in a light most favorable to the party opposing the motion. *Szumny v. Am. Gen. Fin.,* 246 F.3d 1065, 1067 (7th Cir. 2001); *Latuszkin v. City of Chicago,* 250 F.3d 502, 504 (7th Cir.2001); *United Transp. Union v. Gateway Western Ry. Co.,* 78 F.3d 1208 (7th Cir.1996).

#### B. Title VII National Origin Discrimination

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e, *et seq.*, as amended. Prior to filing an employment discrimination claim, however, a plaintiff must exhaust his administrative remedies by filing a timely EEOC charge and receiving a Right to Sue Notice. *See* 42 U.S.C. § 2000e–5(b); 29 C.F.R. § 1601.28(a)(1). Baker properly followed these procedures; nevertheless, substantive flaws in his EEOC charge undermine his national origin discrimination claim. It is a well-established rule that a Title VII plaintiff cannot allege claims in a lawsuit that are not included in his EEOC charge because the purpose of the EEOC charge is to notify the employer of the nature of the charges against it, and to provide the EEOC with a basis for undertaking an investigation of the allegations as well as to conciliate between the parties. *Vela v. Village of Sauk Village,* 218 F.3d 661, 664 (7th Cir.2000); *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994). An exception to this general rule, however, allows for some divergence between a Plaintiff's EEOC charge and his claims in a lawsuit. *Id.; see also Babrocky v. Jewel Food Co.,* 773 F.2d 857, 864 (7th Cir.1985); *Sauzek v. Exxon Coal USA, Inc.,* 202 F.3d 913, 920 (7th Cir. 2000). Under this exception, a plaintiff may allege facts in his complaint different from those in his EEOC charge only when they are "like or reasonably related" to the allegations contained in his EEOC charge. *Cheek,* 31 F.3d at 500. Baker's EEOC charge did not include a claim of national origin discrimination distinct from his claim of race discrimination. Accordingly, in order for his national origin claim to survive a motion to dismiss, it must be "like or reasonably related" to the allegations contained in the EEOC charge, and must "reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.*

■ The claims in a federal complaint and the claims in an EEOC charge are "like or reasonably related" if there is a factual relationship between them such that, at a minimum, the EEOC charge and the complaint "describe the same conduct and implicate the same individuals." *Id.* at 501; *see Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir.1992) (EEOC charge and complaint are not like or reasonably related where employee complained to the EEOC of only certain episodes of discrimination, and then sought judicial relief for different episodes of discrimination).

On the EEOC charge form, Baker checked only the box for race discrimination and supported his complaint with the following statement:

> I believe that I have been discriminated against ... in that I have not been promoted because of my race, Black.... In addition, Carl Hoffman made a discriminatory remark which clearly indicated to me that I would not be considered for promotion because of my race.

Compl., Ex. A. Not only did Baker fail to check the box for national origin discrimination on the EEOC charge form, he did not refer to national origin discrimination or identify his national origin in the charge's narrative section. *Id.* The clear and unequivocal tone of Baker's allegations of race discrimination set forth in the EEOC charge supports a race claim. His allegations do not, however, support or put FSSA on notice of a national origin complaint.

In addition, Baker's complaint and his EEOC charge do not describe the same conduct or implicate the same individuals so as to be "like or reasonably related." In his complaint, Baker states that he applied for the same position as Hunter, an African–American; that Hunter was offered the position; and that Hunter was quickly terminated from the position be-

cause he was unable to perform the required duties. Compl. ¶¶ 13–14. Baker's EEOC charge, on the other hand, mentions a racially derogatory remark made by his supervisor, Hoffman,[2] but fails to allege or even mention discrimination based on national origin by that supervisor or others. The DFE's hiring of Hunter, according to Baker, is the crux of his national origin discrimination claim whereby FSSA "and its agents were even willing to set aside their inherent racial animus to accommodate Hunter for the position of DFE director, rather than offer it to [Baker]." Pl. Mem. of Law in Opp. to Def. Mot. to Dismiss ("Memorandum") at 5. Because Baker complained to the EEOC of only race discrimination, however, he cannot subsequently seek judicial relief for national origin discrimination based on an entirely different and unmentioned set of facts. *Rush,* 966 F.2d at 1110.

Baker further states in his Memorandum that "[i]t is common knowledge a Nigerian is necessarily a Black person. Those two immutable characteristics were adverse factors in [Baker's] quest for development." *Id.* Even if we were to assume *arguendo* that all Nigerians are Black, it does not follow that all Black people are Nigerian. Hence, the term "Black" does not encompass national origin nor would it reasonably provide the EEOC with a sufficient basis to initiate an investigation of a national origin discrimination. *See Torres v. City of Chicago,* No. 99C 6622, 2000 WL 549588 at *2 (N.D.Ill. May 1, 2000) (citing *Alonzo v. Chase Manhat-

*tan Bank, N.A.,* 25 F.Supp.2d 455, 459 (S.D.N.Y.1998), which discusses the uniqueness of the term "Hispanic" because it encompasses the concepts of both race and national origin in a way that the terms "white," "black," and "Asian" do not.) Because we find that the national origin discrimination claim in the federal complaint is not "reasonably related" to the claims in the EEOC charge, we *DISMISS* Baker's Title VII national origin claim.[3]

### C. Sovereign Immunity

FSSA contends that because of Eleventh Amendment sovereign immunity, and because it is not a "person" acting under color of state law, dismissal of Baker's claims of discrimination under 42 U.S.C. § 1981 and § 1983 is proper. Section 1981 protects certain rights "against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).[4] Section 1983 protects citizens' "rights, privileges, or immunities secured by the Constitution and laws" from "every person, who under color of any statute, ordinance, regulation, custom, or usage ..." subjects them to the deprivation of those rights. 42 U.S.C. § 1983.

■■■■■ FSSA, the only defendant in the case, is an agency of the State of Indiana, and is considered "the state" for the purposes of Eleventh Amendment immunity. *Kroll v. Bd. of Trustees of Univ. of Ill.,* 934 F.2d 904, 907 (7th Cir.1991) *cert. denied,* 502 U.S. 941, 112 S.Ct. 377, 116 L.Ed.2d 329 (1991); *see* U.S. Const. amend. XI.[5] Under the Eleventh Amendment, a state

---

**2.** The EEOC charge, unlike the complaint, makes no mention of the racially discriminatory remark allegedly made by Jim Mooney.

**3.** Defendant does not challenge, nor are we dismissing, Plaintiff's Title VII race discrimination claim.

**4.** The rights enumerated in § 1981(a) are "the right to make and enforce contracts, to sue,

be parties, give evidence and to the full and equal benefit of all laws and proceedings for the security of persons and property ..." 42 U.S.C. § 1981(a).

**5.** "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of

may claim immunity from suits brought against it in federal court. *Id.* Unless Congress has abrogated the states' sovereign immunity as a defense to claims under 42 U.S.C. §§ 1981 and 1983 by explicit and clear language indicating its intent to do so, the Eleventh Amendment bars such claims. *Quern v. Jordan,* 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Well-settled case law makes it clear that Congress has not abrogated state sovereign immunity with respect to §§ 1981 and 1983. *Id.; see also Will v. Mich. Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Furthermore, actions under § 1983 do not lie against a State because they are not considered "persons" for purposes of the statute. *Will,* 491 U.S. at 71, 109 S.Ct. 2304.

▋ Although Eleventh Amendment sovereign immunity bars Baker's cause of action, he argues that the sovereign immunity defense does not apply in his case because of the *Ex parte Young* exception. *See* 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The Seventh Circuit, in *MCI Telecomms. v. Ill. Bell Tel. Co.,* 222 F.3d 323 (7th Cir.2000), outlined the requirements for the *Ex parte Young* exception, which are: (1) naming the individual state official(s) as defendant(s) in a federal suit; and (2) seeking "prospective relief for an ongoing violation of a federal law." *Id.*

at 335 (citing *Ex parte Young,* 209 U.S. at 159–60, 28 S.Ct. 441); *see also* Chemerinsky, *Federal Jurisdiction,* § 7.5, at 345–46 (Little Brown 1989). The *Ex parte Young* exception to sovereign immunity is narrowly tailored and applies only to "individual state officials," sued in their individual capacities, and not to a State or its agencies. *Papasan v. Allain,* 478 U.S. 265, 277, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 269–70, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Ryan v. Ill. Dept. of Children and Family Servs.,* 185 F.3d 751, 758 (7th Cir.1999); *MCI Telcomms.* at 336–37. Although Baker claims he is seeking prospective injunctive relief for an ongoing violation of federal law, he states that he purposefully did not name specific individuals at FSSA in his complaint. Memorandum at 1, n. 1.[6] The complaint does, in passing, mention certain state employees as having engaged in race discrimination, but it does not name them as parties to the lawsuit in any capacity, much less in their individual capacities. Nor does the complaint seek any relief with respect to any official. We cannot permissibly enjoin unnamed and otherwise unidentified individuals. Accordingly, we *GRANT* Defendant's motion to dismiss Plaintiff's §§ 1981 and 1983 claims.

### Conclusion

For the reasons set forth above, we find that: (1) Plaintiff failed to allege a Title

---

another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

**6.** The complaint seeks among other types of relief, a permanent injunction enjoining FSSA, its agents, successors, employees and those acting in consort with FSSA, from continuing to violate Baker's civil rights. Compl., Relief Requested, ¶ 5.

Baker relies on *Monell v. Dept. of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), stating that official capacity claims "generally represent only anoth-

er way of pleading an action against an entity of which an officer is an agent." *Id.* at 691 n. 55, 98 S.Ct. 2018. However, Plaintiff ignores the fact that *Monell* applies to local government units, but not to the state or its agencies. *Id.* at 691 n. 54, 98 S.Ct. 2018; *see also Will v. Mich. Dept. of State Police,* 491 U.S. 58, 62–64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (stating that although *Monell* held that a municipality was a person under § 1983, a State is not a person within the meaning of § 1983).

VII national origin discrimination claim in his EEOC charge, so he cannot allege such a claim in his complaint; and (2) Plaintiff cannot sue Defendant because Defendant is a State protected by sovereign immunity, and Defendant is not a "person" under § 1983 such that there is no jurisdiction to bring this claim in federal court. Accordingly, Defendant's Motion to Dismiss is *GRANTED*. Plaintiff's Title VII race discrimination claim remains.