**Pamela J. JORDAN, Plaintiff–Appellant,**

v.

**Lawrence H. SUMMERS, Secretary, Department of the Treasury, Defendant–Appellee.**

No. 99–2277.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1999.

Decided Feb. 29, 2000.

338

Richard L. Darst (argued), Indianapolis, IN, for Plaintiff–Appellant.

Tim A. Baker (argued), Office of the United States Attorney, Indianapolis, IN, for Defendant–Appellee.

Before BAUER, CUDAHY and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

Pamela Jordan, an African–American accounting technician with the United States Customs Service (Customs), applied for but did not get a promotion in 1994. She filed this lawsuit in the district court[1] alleging racial discrimination and retaliation in violation of Title VII. She also alleged that Customs improperly failed to process her complaint of discrimination. Customs filed a motion for summary judgment that the district court granted. We affirm.

I. FACTS AND DISPOSITION BELOW

Pamela Jordan began working for Customs (a part of the United States Department of the Treasury) in 1988. She had received an undergraduate degree in accounting in 1983,[2] graduating with a 2.5 grade point average on a 4.0 scale. She started with Customs as a GS–5 level accounting technician and was promoted to GS–6 after a year. In May of 1990, Customs promoted her to GS–7, where she remained at the time of the district court action. During her years at Customs prior to this lawsuit, Jordan worked in accounts payable where she performed auditing functions, made disbursements for petty cash expenses and made recurring payments for utilities for Customs's offices around the country.

In November of 1994, Customs announced three vacancies for operating accountant positions with promotion potential to the GS–12 level. Customs filled these vacancies using the provisions of its Merit Promotion Plan (merit plan). Under the merit plan, each interested employee submitted a "knowledge, skills and abilities form" (KSA) and an application. The KSA instructed applicants to provide information regarding experience, education, accomplishments and training to aid in the evaluation of their applications. Based on these materials, a three-member panel rated every applicant on four selection criteria.[3] If a majority of the panel rated a candidate at the "Good" or "Excellent" level[4] on *every* primary criterion, that candidate was placed in the "best qualified" group. Being placed in the "best qualified" group served as a threshold requirement under the merit plan because only members of that group were referred for further consideration. Making the "best qualified" group did not *guarantee* promotion, but any candidate who did not make it could not be considered for the operating accountant vacancies. The mer-

---

1. At the time Jordan commenced this action, Robert E. Rubin was the Secretary of the Treasury and was properly named as the defendant at that time. On appeal, Jordan correctly names Lawrence H. Summers, who is the current Secretary of the Treasury, as defendant-appellee. *See* FED. R. APP. P. 43(c)(2); CIR. R. 43.

2. During the five years between graduation and her employment with Customs, Jordan worked as a substitute teacher, a mail carrier and a distributions clerk for the United States Postal Service. None of these jobs involved any accounting duties.

3. The four criteria were: (1) knowledge of accounting principles, practices and techniques; (2) ability to analyze accounting records to ensure accurate computer reports; (3) ability to communicate orally; and (4) knowledge of Government Accounting Office regulations, policies and procedures to determine appropriate accounting action. Criteria 1, 2 and 3 were "primary criteria" for which applicants could be given a score of 0, 1.5, 3, 4.5 or 6. Criterion 4 was "secondary" and was scored as 1, 2, 3 or 4.

4. A score of 4.5 was "Good," and 6 was "Excellent."

it plan also required each candidate to have completed 24 hours of accounting courses before being promoted to operating accountant.

After learning of the vacancies in 1994, Jordan applied and submitted her KSA. Her bid for promotion failed: she was not placed in the "best qualified" group because two of the three panel members rated Jordan below "Good" on her ability to analyze accounting records to ensure accurate computer reports (Criterion 2). One of these found Jordan's terminology "nonsensical," thought that Jordan "should have been able to express her achievements and abilities in more detail" and found other critical information lacking from Jordan's KSA. Ex. 1, tab 6 at 2–3.[5] The other panel member who rated her below "Good" found her KSA unclear and believed that "Ms. Jordan's response to Criterion 2 lacked detail and explanation." Ex. 1, tab 7 at 2. Each of these board members rated Jordan at 3.0 on Criterion 2(which was below "Good"). Having been rated below "Good" by a majority of the panel on a primary selection criterion, Jordan was not placed in the "best qualified" group and, therefore, could not have been selected to fill one of the three operating accountant vacancies under the merit plan.

After being rejected for this promotion, Jordan approached the Equal Employment Opportunity Division (EEO)—a part of the Department of the Treasury, in function much like the EEOC—regarding what she believed to be discriminatory reasons for not having been promoted. Jordan filed a formal EEO charge in June of 1995.[6] On March 27, 1996, an administrative law judge remanded the charge to the agency for it to explore the applicability of a continuing violation theory to Jordan's claims. In May, the Regional Complaints Center of the Department of the Treasury dismissed a portion of the complaint in substance because it had already been decided in one of Jordan's prior EEO filings. After this partial dismissal, the administrative law judge stayed further proceedings to allow an appeal to the EEOC. Jordan lost her appeal: the EEOC affirmed the partial dismissal on June 10, 1997. On September 10, 1997, Jordan filed the instant action in federal district court, alleging that Customs "groomed, detailed, reassigned, and promoted White accounting technicians who did not have degrees in accounting" while refusing to do the same for her. Complaint ¶ 9.

In the district court, Jordan first claimed that Customs discriminated against her on the basis of her race and failed to investigate her 1995 charge. She later amended her complaint to include three counts under Title VII:(1) Customs improperly failed to process her administrative complaint, (2) Customs discriminated against her on the basis of race, and (3) Customs retaliated against her for her EEO activity. Customs moved for summary judgment. The district court found that Jordan failed to adduce sufficient evidence to create a triable issue of fact and granted summary judgment in favor of Customs on all counts. Jordan appeals.[7]

## II. DISCUSSION

We review the district court's decision to grant summary judgment *de novo*, considering all facts in the light most favorable to Jordan and resolving all inferences in her favor. *See Simpson v. Borg–Warner Automotive, Inc.*, 196 F.3d 873, 876 (7th Cir.1999); *Ghosh v. Indiana Dep't of Envtl. Management*, 192 F.3d 1087, 1090 (7th Cir.1999). Summary judgment is proper when there is no genuine issue of

---

5. We cite to exhibits in the record on appeal as "Ex. [volume], tab [number] at [page]."

6. Jordan has alleged discrimination at Customs since 1989 and signed her first of several complaints in January of 1991.

7. The district court also found against Jordan on her continuing violation theory, but Jordan does not appeal that part of the decision. The only issues before us relate to Jordan's nonselection to fill one of the three operating accountant vacancies in 1994.

material fact and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Jordan must present "specific facts showing that there is a genuine issue for trial," FED.R.CIV.P. 56(e), and "only if a reasonable jury could render a verdict" for Jordan does she defeat summary judgment. *Vanasco v. National Louis Univ.,* 137 F.3d 962, 965 (7th Cir. 1998). *See also Griffin v. City of Milwaukee,* 74 F.3d 824, 827 (7th Cir.1996).

### A. Jordan's Failure–to–Process Claim

█ Jordan claims that Customs improperly failed to process her 1995 EEO complaint, and she asks us to order Customs to process it for an EEOC hearing. Customs argues, as it did below, that this request must be denied because Jordan fails to state a valid claim under Title VII or, in any event, the uncontradicted evidence shows that Customs *did* properly process Jordan's claim. The district court assumed, without deciding, that Jordan stated a valid failure-to-process claim but then found that Customs, in fact, had processed the claim. While we agree with the district court's disposition, we believe that the evidence need not have been considered because Jordan does not state a valid claim for relief under Title VII, and we can decide this issue on that basis. *See Alexander v. Rush N. Shore Med. Ctr.,* 101 F.3d 487, 490 (7th Cir.1996) ("[W]e may affirm the judgment of the district court on any sufficient basis supported by the record.").

█ Neither party points to a case that either directly supports or undermines Jordan's failure-to-process cause of action against the EEO, but an analogy to EEOC practice is instructive here. Just as the EEOC processes complaints of discrimination from employees in the private sector, each federal agency must have an EEO Division to process complaints from agency employees. *See* 29 C.F.R. pt. 1614. It is well established that a private-sector employee has no cause of action against the EEOC for its failure to process a charge of discrimination. *See McCottrell v. EEOC,* 726 F.2d 350, 351 (7th Cir.1984) ("It is settled law, in this and other circuits, that Title VII does not provide either an express or implied cause of action against the EEOC to challenge its investigation and processing of a charge."). *See also Smith v. Casellas,* 119 F.3d 33, 34 (D.C.Cir.1997); *Baba v. Japan Travel Bureau Int'l, Inc.,* 111 F.3d 2, 5–6 (2d Cir. 1997); *Scheerer v. Rose State College,* 950 F.2d 661, 663 (10th Cir.1991); *Ward v. EEOC,* 719 F.2d 311, 313 (9th Cir.1983); *Francis–Sobel v. University of Maine,* 597 F.2d 15, 18 (1st Cir.1979); *Gibson v. Missouri Pac. R.R.,* 579 F.2d 890, 891 (5th Cir.1978). The proper course for a private plaintiff whose claim the EEOC mishandled is to bring a lawsuit against the plaintiff's employer on the merits, not one against the EEOC. *See McCottrell,* 726 F.2d at 352. A similar rule is warranted here. Jordan presents no persuasive reason why she, as a federal employee, should be given an implied failure-to-process cause of action under Title VII that has been consistently denied to private plaintiffs. And even if the EEO Division botched the processing of her complaint, Jordan is now already in a federal court on the merits, and any earlier mishandling is essentially moot. Jordan's failure-to-process claim does not state a claim upon which relief can be granted, and Customs is entitled to judgment as a matter of law. We, therefore, affirm the district court's decision to grant summary judgment on Count 1 of Jordan's complaint.

### B. Discrimination and Retaliation Claims

█ Jordan presents no direct evidence of racial discrimination or retaliation. Ordinarily, a Title VII failure-to-promote claim based on indirect evidence proceeds under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36

L.Ed.2d 668 (1973). *See Ghosh*, 192 F.3d at 1090. But here, Customs apparently waives any argument attacking Jordan's prima facie case. Instead of contesting the existence of a prima facie case, Customs proffers a legitimate, nondiscriminatory reason for Jordan's non-selection and argues that Jordan fails to present sufficient evidence of pretext. In this context, we may assume that Jordan established a prima facie case of racial discrimination and retaliation, and we may then turn directly to the issue of pretext. *See Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir.1998).

Customs asserts that Jordan's failure to meet the threshold requirements of the merit plan provided adequate grounds for denying her promotion to operating accountant. We agree. As explained earlier, a majority of the selection panel rated Jordan below "Good" on one of the primary selection criteria because she provided insufficient descriptions and used "nonsensical" terminology in her KSA. On this basis, Jordan was excluded from the "best qualified" group and could not have been considered for the promotion. Because Customs has articulated this facially nondiscriminatory reason for Jordan's non-selection, the burden now shifts to Jordan to demonstrate pretext. *See Ghosh*, 192 F.3d at 1091; *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817.

■ In order to show pretext,[8] Jordan must demonstrate that Customs' proffered reason is a lie or completely lacks a factual basis. *See Ghosh*, 192 F.3d at 1092; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir.1996). Even if the reasons for Jordan's non-selection were mistaken, ill considered or foolish, so long as Customs honestly believed those reasons, pretext has not been shown. *See Ghosh*, 192 F.3d at 1092; *Crim v. Board of*

*Educ. of Cairo School Dist. No. 1*, 147 F.3d 535, 541 (7th Cir.1998). Basically, to meet her burden here, Jordan "must present evidence to suggest not that [Customs] was mistaken in denying her [promotion] but that it was lying in order to cover up the true reason," her race or her prior EEO activity. *Vanasco*, 137 F.3d at 962. *See also Crim*, 147 F.3d at 541.

■ Jordan first argues that Customs "had a long history of grooming and preselecting white females [sic] employees for promotion to the position of accountant." Appellant's Br. at 26–27. This "grooming," she argues, gave white employees experience that was reflected in their KSAs, thus garnering higher ratings from the merit plan selection panel. Customs denied Jordan experience by failing to "groom" her, she continues, which is why she fell below the merit plan's threshold requirements. As support for this argument, Jordan advances evidence—contained in her own deposition and affidavits from coworkers—regarding ten white female accounting technicians who were promoted to operating accountant after this alleged "grooming." Jordan specifies the departments in which these "groomed" women worked before being promoted but fails to explain what kind of special experience was gained in those departments. She produces only cryptic job descriptions, referring to "special projects," "special details," "promotional assignments" and the like. Her evidence does not demonstrate how these "special projects" rendered her KSA deficient by comparison. Jordan also points to one affidavit in particular that states, "The perception was that positions were being held for [those white women] until they had met detailed knowledge requirements to qualify for accountant positions." Appellant's Br. at A48–A49 (affidavit of Kimberly Vanlandingham). But without supporting facts or explanatory

---

8. As a preliminary matter, Jordan asserts that pretext is not an appropriate ground for summary judgment. She is wrong: summary judgment is proper whenever there is no genuine issue of material fact, and, in numerous cases, we have approved a grant of summary judgment based on pretext. *See, e.g., Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir.1998).

details, this "perception" is merely speculation regarding Customs's motives and cannot defeat summary judgment. *See Abioye*, 164 F.3d at 368. In total, Jordan's evidence of "grooming" amounts to little more than conclusory statements, indications of opinion or speculation which do not produce a genuine issue for trial under Rule 56(c). *See, e.g., Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir.1998).

 As further evidence of pretext, Jordan asserts that white female employees "were promoted to an accountant position shortly after they obtained the minimum 24 hours of accounting courses, whereas Ms. Jordan who had an accounting degree was not promoted to accountant for many years." Appellant's Br. at 27. Jordan's argument finds a basis to the extent that her accounting degree fulfilled the 24–hour education requirement of the operating accountant vacancies. But an accounting degree did not automatically fulfill all of the *other* requirements under the merit plan. To compete further, applicants, including those with accounting degrees, must also have been placed into the "best qualified" group by the merit plan selection panel. Jordan was *not* placed into that group based on her deficient KSA. The fact that Jordan has an accounting degree[9] does not discredit the selection panel's rating.

 Jordan also attempts to create a triable issue of pretext by claiming that the merit plan selection panel was somehow biased against her. She asserts that this bias is shown by the fact that, though two of the three panel members rated her below "Good" on Criterion 2, the third panel member rated her at the highest possible score, an "Excellent." Jordan argues that the third panel member's "Ex-

cellent" rating was "more accurate for a person with a degree in accounting." Reply Br. at 20. This, Jordan says, is evidence that the first two panel members were biased against her. Even if Jordan is correct that the third panel member was the most perceptive in assessing her abilities, the strongest (yet reasonable) inference we can draw in her favor is that the first two panelists were mistaken in their ratings of Jordan. But, even assuming that their ratings were horrendously inaccurate, Jordan does not come close to showing pretext with this argument. Pretext is a lie, not merely a mistake. *See Ghosh*, 192 F.3d at 1092. Discrimination laws serve only to prevent consideration of forbidden characteristics—like race—but they are not, as we have repeatedly noted, court-enforced merit selection programs. *See Vanasco*, 137 F.3d at 967. Nor do we use them merely to second-guess the validity of employer programs like the merit plan. *See id.* at 968; *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 501(7th Cir. 1998). Because Jordan has produced no evidence that the merit plan selection panel used forbidden criteria in evaluating her KSA, her argument fails here.

 Next, Jordan focuses on one white female employee in particular: Kim Cochenour. Cochenour applied for the same vacancies as Jordan and was selected to fill one of those vacancies. But—and Jordan tries to get serious mileage out of this "but"—even though Cochenour had not completed the required 24 hours of classes,[10] her application indicated that she had, and Customs promoted her. Jordan claims that promoting "the white applicant who filed a false application and who had not even completed the minimum 24 hours of accounting courses" is evidence of pre-

---

9. Apparently, Jordan believes that her undergraduate degree entitled her to a promotion because it showed that she was better qualified than other applicants. What Jordan believes, however, is irrelevant to our pretext analysis. *See Sanchez v. Henderson*, 188 F.3d 740, 746 (7th Cir.1999). The pretext inquiry

seeks the defendant's true motivation for its employment decision. *See id.*

10. Apparently, Cochenour was enrolled in but had not completed 24 hours when she was first promoted.

text. Reply Br. at 13. Neither party disputes that Cochenour was initially promoted before completing the required 24 hours of classes. Nor do they dispute that Customs later removed her from her operating accountant position and then re-promoted after she completed her classes. However, the parties go round and round about all sorts of details surrounding Cochenour's eventual rise to operating accountant: Did Customs know that she had not completed her courses when it first promoted her? Was Cochenour ever officially demoted? Was there a Customs-wide conspiracy to improperly promote this one white female accounting technician or was it simply a mistake? While there are some disputed facts regarding Cochenour's promotion, they are of little moment because they are immaterial to the issue at hand. *See Walter v. Fiorenzo,* 840 F.2d 427, 434 (7th Cir.1988) ("[A] party [cannot] defeat summary judgment by raising one immaterial issue of fact...."). We are trying to determine here whether there is a genuine issue of material fact regarding the pretextuality of Customs's proffered reason for not promoting Jordan. At best, Jordan's discussion of Cochenour shows favorable treatment of one employee who happened to be white. This has nothing to do with the merit plan selection panel's ratings of Jordan: Jordan does not explain how Cochenour's promotion-demotion-promotion affected the evaluation of *Jordan's* KSA. Even if Cochenour was promoted before she should have been, the fact remains that Jordan failed to meet the requirements of the merit plan, and she produces no evidence that *her* negative ratings, which provide a facially nondiscriminatory reason for not promoting her, were actually the product of racial discrimination.

■ Finally, Jordan addresses her retaliation claim and briefly argues that Customs promoted two African–American woman because they "had not complained about the race discrimination." Reply Br. at 24. Jordan argues that she was more qualified than either of these women, and that they were only promoted "so that the employer could say it was not discriminating on the basis of race." *Id.* at 23. Jordan provides no evidence, beyond these assertions, suggesting that the promoted women were selected either because they had not complained of race discrimination or as part of a cover up. These naked assertions do not undermine the legitimacy of Customs's proffered reason for Jordan's non-selection. *See Abioye,* 164 F.3d at 368. Even the most generous inference based on the facts before us fails to create a genuine issue for trial on Jordan's retaliation claim.

Despite her many attempts, Jordan has not produced evidence from which a rational trier of fact could infer that Customs's proffered reason for failing to promote her was a lie or had no basis in fact. Therefore, summary judgment on Counts 2 and 3 of Jordan's amended complaint was proper. *See Ghosh,* 192 F.3d at 1091.

III. CONCLUSION

For the foregoing reasons, and because we find Jordan's additional arguments to be without merit, the judgment of the district court is AFFIRMED.