**Penny RHODES, Plaintiff–Appellant,**

v.

**PROFESSIONAL TRANSPORTATION, INC., Defendant–Appellee.**

No. 00–2500.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 13, 2000.

Decided Feb. 9, 2001.

---

Before COFFEY, EASTERBROOK, and MANION, Circuit Judges.

## ORDER

Penny Rhodes sued her former employer, Professional Transportation, Inc., for retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, after she filed sexual harassment charges against two employees of CSX, a major client of Professional. A magistrate judge presiding by consent granted summary judgment for Professional, concluding that Rhodes may have failed to establish a prima facie case of retaliation and, in any event, failed to demonstrate that Professional's proffered reasons for terminating her were pretextual. We affirm.

Rhodes began her employment with Professional in April 1997. Professional provides ground transportation to railroad employees in several states, including Indiana, where Rhodes worked at the com-

pany's Garrett office. She started as a van driver, transporting railroad employees on a daily basis. After five months she was promoted to the position of Division/Local Manager. At all times during Rhodes' employment, Glenn Hensley served as the Regional Manager; David DeTar, as the General Manager; and Robert Tevault, as the Vice President of Operations. Rhodes primarily reported to Hensley but was to follow the instructions of all levels of upper management.

In November 1997, two employees of CSX Transportation, a railroad company and Professional's only client at its Garrett location, made sexually graphic and threatening comments to Rhodes that were overheard by her husband, who is also a CSX employee. Rhodes' husband reported the incident to a CSX manager, who then passed this information on to a CSX human relations employee, Robin Scherch. Scherch asked Rhodes to file a formal complaint against these two CSX employees in December 1997, and Rhodes did so. As a result, CSX launched an investigation and eventually reprimanded the two employees. But during the course of the investigation, one of Rhodes' harassers and another CSX employee in turn filed complaints against Rhodes for using profane and sexual language, and for inappropriately touching CSX employees. This information was passed on to Professional's vice president of operations, Tevault. Tevault met with CSX officials in Florida concerning these reports in March 1998. At the conclusion of that meeting, Tevault telephoned Rhodes, who admitted having used profane and sexually graphic language during conversations with CSX employees and also to having touched several CSX employees inappropriately. Tevault verbally admonished her that this kind of behavior would not be tolerated.

The next day, Tevault learned that Rhodes had again attempted inappropriate contact with a CSX employee, and that she had refueled a Professional van with the engine running and while CSX employees were seated in the vehicle. Upset by these reports, Tevault contacted Hensley and DeTar in order to get their assessment of Rhodes' job performance. Upon learning that Hensley and DeTar had lately been dissatisfied with Rhodes' performance and believing that fueling a running vehicle was a violation of state law, Tevault sent a letter to Rhodes in which he explained his concerns about her continued use of profanity and sexual innuendo, her attempt to inappropriately touch a CSX employee on March 13, 1998 despite his directive the day before to stop that behavior, and her unsafe practice of refueling a van with the engine running. In that letter, Tevault offered Rhodes the option of resigning Rhodes declined to resign and was terminated on March 14, 1998.

Rhodes filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that Professional had terminated her because she had filed a sexual harassment complaint against the two CSX employees. After an investigation, the EEOC concluded that the facts did not substantiate any retaliation by Professional and issued Rhodes a right-to-sue letter. Rhodes brought suit in July 1999 in the Northern District of Indiana, and the parties consented to entry of judgment by a magistrate judge. See 28 U.S.C. § 636(c). In granting the defendant's motion for summary judgment, the court expressed doubt that Rhodes had established a prima facie case of retaliation, specifically on the question whether a causal connection existed between her termination and her prior complaint of sexual harassment. In any event, the magistrate judge concluded that, even if Rhodes had shown a prima facie case of retaliation, she

had not offered evidence establishing a material dispute concerning whether the reasons Professional gave for terminating her were pretextual.

■ To demonstrate a prima facie case of retaliatory discharge, Rhodes needed evidence that 1) she engaged in protected activity under Title VII when she complained of sexual harassment by CSX employees, 2) Professional took adverse employment action against her, and 3) there was a causal connection between her termination and the prior complaint of sexual harassment. *See King v. Preferred Technical Group*, 166 F.3d 887, 892 (7th Cir.1999). In our de novo review of the grant of summary judgment, we review the evidence in the light most favorable to Rhodes and draw all inferences in her favor. *See Jordan v. Summers*, 205 F.3d 337, 341 (7th Cir.2000).

■ Professional gave five reasons why Rhodes was terminated: 1) she used profanity at work after being told that it would not be tolerated, 2) she engaged in inappropriate touching of male CSX workers, 3) she violated company policy by refueling a van while it was running, 4) she performed her job duties poorly, and 5) she harmed Professional's relationship with CSX because of her negative behavior. Because Professional offered several reasons for terminating her, Rhodes was required to demonstrate that every reason offered was pretextual. *See Ghosh v. Indiana Dept. of Envtl. Mgmt.*, 192 F.3d 1087 (7th Cir.1999) ("When the defendant offers multiple reasons for its employment decision, the plaintiff must show that all of the proffered reasons are pretextual in order to reverse the district court's grant of summary judgment."). We agree with the magistrate judge that Rhodes did not demonstrate that all of the reasons offered for her termination were pretextual.

■ First, although Rhodes admitted using profanity at work, she argues that her speech patterns were no more vulgar than those of any other employee. Rhodes' burden, however, was not to show that her behavior was typical of other Professional employees, but rather that Professional's reason for firing her was "a lie or completely lacks a factual basis." *Jordan*, 205 F.3d at 343 Rhodes' evidence that she was not the only one using profanity does not rebut Professional's explanation that she continued to use profanity even after she was specifically warned to stop and does not excuse her failure to follow her employer's instructions Rhodes responds to Professional's second reason for termination, the inappropriate touching of CSX employees, the same way. While she admits massaging the necks of CSX workers after Tevault ordered her to stop, Rhodes opines that this conduct did not warrant termination Rhodes' opinion of the seriousness of her actions, however, is irrelevant in determining whether the offered reason is pretextual. *See Jordan*, 205 F.3d at 344 n. 9 (noting that the pretext question involves the defendant's motivation, not the plaintiff's opinion of that reason or the facts).

■ Further, Rhodes does not show that Professional's third reason for terminating her--refueling a company van while it was running with passengers inside--was pretextual either. She admits that she refueled a company van while passengers were sitting inside and while the engine was running but insists the action did not breach any official company policy. However, Tevault testified that he believed that this practice was a violation of state law and against company policy. Although Tevault was mistaken on both counts, as long as he sincerely believed this was a violation, his error does not make this reason pretextual. *See Jordan*, 205 F.3d at 344.

Rhodes presented no evidence to suggest that Tevault did not believe, at the time he acted, that her actions were a violation of state law and company policy. Moreover, it makes no difference whether, as Rhodes contends, Regional Manager Hensley knew that other drivers were refueling their vans with the motors running Rhodes had no evidence that Tevault knew anything about other drivers committing the same unsafe practice, and because Tevault, not Hensley, made the decision to fire her, Rhodes needed to show that Tevault used this as an excuse to fire her *See Willis v. Marion County Auditor's Office,* 118 F.3d 542, 546 (7th Cir.1997).

The remaining two reasons offered by Professional are more problematic. Professional cited poor performance as a reason for firing Rhodes, but her immediate supervisor Hensley described her as "a good worker, she was a good manager." He attributed any problems Rhodes might have been having with her performance to an extenuating circumstance: that she had to cover a lot of extra runs because of "a lot of drivers quitting, would not work." Furthermore, he noted that Rhodes worked long hours to cover extra shifts and opined that she only became irritable and missed paperwork deadlines as a result of being overworked. Moreover, the only documents in the record criticizing Rhodes' job performance are from January 1998, after she filed her complaint of sexual harassment Hensley's testimony also casts doubt on the suggestion that Rhodes had a negative effect on Professional's relationship with CSX. With respect to this fifth reason given for firing Rhodes, Hensley explained that "[u]sually most of the CSX people, you know, would always have good things to say, that, you know, she was doing the best she can for what [Professional] wants to give her."

Rhodes is correct that we have recognized an exception to our "all reasons must be pretextual" rule. Thus, "[t]here may be cases in which the multiple grounds offered by the defendant for the adverse action of which the plaintiff complains are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment." *Wolf v. Buss (America) Inc.,* 77 F.3d 914, 920 (7th Cir. 1996) (citing *Russell v. Acme–Evans, Co.,* 51 F.3d 64, 69–70 (7th Cir.1995)) But Rhodes's situation does not fall into this exception. Neither of the last two reasons offered by Professional–that Rhodes was performing poorly and that her performance was interfering with Professional's relationship with CSX–is intertwined with Professional's strongest basis for firing her, that she disobeyed Tevault's instructions to cease behaviors that CSX management had called to his attention. Even if other aspects of her job performance were truly satisfactory, she still continued to use profanity and engage in inappropriate sexual behavior in defiance of the company's instruction that she stop those behaviors. That reason for terminating her remains valid, regardless of her true job performance Furthermore, the two reasons are not so intertwined that the validity of one is dependent on the other. Thus, Rhodes does not qualify for the *Wolf* exception and was therefore still required to present evidence that each reason offered by Professional was pretextual. Because she failed to do so, the magistrate judge correctly found that Rhodes could not survive summary judgment.

AFFIRMED.