John B. DEVINE, Plaintiff–Appellant,

v.

**BOARD OF COMMISSIONERS OF ELKHART COUNTY, et al.,**
**Defendants–Appellees.**

No. 01–3742.

United States Court of Appeals,
Seventh Circuit.

Argued May 13, 2002.

Decided Oct. 7, 2002.

Before ROVNER, DIANE P. WOOD, WILLIAMS, Circuit Judges.

## ORDER

John B. Devine sued his former employer, the Board of Commissioners of Elkhart County ("County Board"), alleging that he was fired because of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), *et seq.* or, alternatively, in retaliation for exercising his First Amendment rights. The district court granted summary judgment for the County Board on both claims, and Devine appeals. We affirm.

## I. BACKGROUND

Devine worked as a jail officer for the Elkhart County Sheriff's Department. Early one morning in March 1993, a jail inmate under Devine's watch suffered a seizure. Devine and two other officers attempted to stabilize the inmate. As he regained consciousness, the inmate coughed and spat a substantial amount of blood onto Devine. Devine was not wearing latex gloves during this incident and had a number of cuts on his hands. He had tried to find some gloves in the jail before attending to the inmate but found none. Later that day, Devine wrote a memorandum to the warden complaining about the lack of gloves. He received his memorandum back with this written response: "Damit [sic], make do!! Too much $ being spent!!"

A few weeks later Devine became ill with infectious hepatitis, and over the next several years he suffered a series of debilitating illnesses including Hepatitis B, chronic pneumonia, swollen glands, fevers, and rashes that covered his body. Devine sought treatment from a host of doctors, and ultimately, in 1998 was diagnosed with Acquired Immune Deficiency Syndrome ("AIDS"). Doctors gave him a life expectancy of five to ten years.

By examining old jail records, Devine pieced together that he may have been exposed to the disease during the 1993 incident: Jail records revealed that the inmate had the Human Immunodeficiency Virus ("HIV"), the virus that causes AIDS. Based on this information, Devine filed a workers' compensation claim. The county denied the claim, concluding that he could not prove that his illness was work-related. After learning about the denial, Devine confronted jail commander John Perry with allegations that he had been exposed to HIV because of the jail's failure to maintain an adequate supply of latex

gloves. According to Devine, Perry told him during this meeting that his illness made him a "liability" to the sheriff's department.

Shortly after his meeting with Perry, Devine was contacted by a local television news reporter. The reporter, Josh Mann, revealed that he was investigating Devine, who, in addition to his work as a jail officer, had served for several years as an elected township trustee in Elkhart County. Mann told Devine that he had been tipped off by someone whom he would not name that there were improprieties in Devine's service as a trustee. In particular, Mann told Devine that he was aware of a state audit conducted two years earlier revealing that Devine had taxed certain improper expenses to the county. Devine was surprised to hear that Mann was interested in the audit, which in his mind had been resolved two years earlier when he had repaid more than $11,000 to county accounts. In an effort to clear his name, however, Devine agreed to talk with Mann.

Devine and Mann met a few days later at Devine's home. Devine decided to reveal to Mann what he saw as the "full story" behind the audit. He believed that the publicity over the two-year-old audit related to his illness; he surmised that someone-perhaps the sheriff or a member of his staff-had leaked word of the audit to silence his claims about how he contracted AIDS. Devine told Mann that he had AIDS and that he believed he contracted the disease because of the jail officials' negligence. He recounted the 1993 incident with the inmate and gave Mann a copy of the memorandum he had written complaining about the lack of gloves, along with his superior's response that he simply "make do." He also gave Mann confidential medical records showing that the inmate involved in the 1993 incident had HIV.

The parties disagree over precisely how Mann obtained the confidential inmate medical records during this meeting. Devine claimed that he gave Mann redacted copies of the records to protect the inmate's identity, but that Mann stole the original documents when left alone during the interview. Mann remembered events differently, but regardless, Devine does not dispute that the reporter obtained an unredacted version of confidential records as a result of their meeting. When Devine discovered later that day that Mann had the unredacted records in his possession, he called Perry and reported what had happened. Perry immediately relayed the information to the sheriff, who initiated an investigation into Devine's potential breach of state law and departmental policy regarding release of confidential records. Four days later, on October 8, 1999, the sheriff terminated Devine for releasing confidential inmate medical records to the news media.

Devine then filed suit, alleging that the sheriff terminated him because he has AIDS or, alternatively, for revealing the embarrassing latex glove story to the news media. The district court granted summary judgment to the defendants on both claims. The court concluded that Devine's ADA claim was foreclosed by statements he made in an application for Social Security disability benefits several months after his termination. Devine told the Social Security Administration that he was unable to work as of the date of his termination; the district court found that this fact precluded Devine from asserting that he was a qualified individual with a disability for purposes of the ADA. Regarding Devine's First Amendment claim, the court determined that Devine failed to show that the county's proffered justification for his termination-the release of confidential medical records-was pretext for

unlawful retaliation. Devine filed a timely notice of appeal.

## II. ANALYSIS

We review a grant of summary judgment *de novo,* viewing all facts and drawing all reasonable inferences in the light most favorable to the nonmovant. *See Central States, Southeast & Southwest Areas Pension Fund v. White,* 258 F.3d 636, 639 (7th Cir.2001). Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The mere existence of a factual dispute will not defeat a motion for summary judgment; the nonmovant must come forward with affidavits or other evidence setting forth specific facts showing a genuine issue for trial. *Vukadinovich v. Bd. of Sch. Tr. of North Newton Sch. Corp.,* 278 F.3d 693, 698 (7th Cir.2002).

### A. ADA Claim

█ To establish a claim under the ADA, a plaintiff must show that she is a "qualified individual with a disability," defined as a person who can perform the essential functions of the job with or without reasonable accommodation from the employer. 42 U.S.C. § 12111(8). The district court concluded that Devine was precluded from establishing that he is a qualified individual with a disability under the ADA, because of statements he made when filing for Social Security disability benefits several months after his termination. On his disability application, Devine reported that his poor health prevented him from working as of October 8, 1999, the date of his termination.

Devine's disability discrimination claim thus implicates the interplay between the ADA and the Social Security Act, 42 U.S.C. § 423, *et seq.* As we have observed, the ADA protects the employment rights of disabled persons who can work, while the Social Security Act provides income to disabled persons who *cannot* work. *Lee v. City of Salem,* 259 F.3d 667, 672 (7th Cir.2001). An ADA plaintiff must show that she is capable of performing the essential functions of the job. 42 U.S.C. § 12111(8). Conversely, a claimant for disability benefits must show that she is unable to perform her previous work or any other type of substantial gainful work that exists in the economy. 42 U.S.C. § 423(d)(2)(A). Because of the statutes' conflicting standards-an ADA plaintiff must prove that she can work while a disability claimant must prove that she cannot-the receipt of disability benefits would seem to foreclose a claim under the ADA. *See Lee,* 259 F.3d at 673.

The Supreme Court has recognized, however, that the inherent conflict between the two statutes may be reconciled in certain cases. *See Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). For example, disabilities might change over time, so that a person unable to work when she applies for disability benefits could later regain the ability to work for purposes of the ADA. *Lee,* 259 F.3d at 673. Alternatively, a person might meet the legal definition of "disabled" under the Social Security Act, but nonetheless be functionally able to work if offered reasonable accommodation by the employer. *Id.*

Although disability benefits do not automatically foreclose an ADA claim, certain statements by a disability claimant will necessarily conflict with a claim under the ADA. *Cleveland,* 526 U.S. at 806. A claimant's own statements about her inability to

work may invoke the doctrine of judicial estoppel, which prevents a party from adopting a position in a legal proceeding contrary to a position successfully argued by that party in an earlier proceeding. *Feldman v. Amer. Mem. Life Ins. Co.*, 196 F.3d 783, 790 (7th Cir.1999). In other words, judicial estoppel "bars a litigant who has obtained a judgment on the basis of proving one set of facts from obtaining a judgment by turning around and proving that the facts were actually the opposite of what he had proved in the prior case." *Reynolds v. City of Chicago*, 296 F.3d 524, 529 (7th Cir.2002).

Accordingly, a claimant's sworn statement in an application for disability benefits that she is "unable to work" would negate an essential element of the claimant's ADA case-that she is a "qualified individual with a disability." *See Cleveland*, 526 U.S. at 806; *Lee*, 259 F.3d at 674. But because of the possibility that the two claims may be reconciled, an ADA plaintiff must be given an opportunity to explain her seemingly inconsistent positions. *Id.* The explanation must be legally adequate, however; an ADA plaintiff may not simply disavow a prior claim of total disability. *Lee*, 259 F.3d at 674–75. Rather, she must assume that her previous assertion of disability was truthful but nonetheless consistent with an ability to perform the essential functions of her job. *Id.*

In his application for disability benefits, Devine made statements about his inability to work that conflict with his claim under the ADA. He asserted in his application that he was unable to work because of his poor health as of October 8, 1999, the date of his termination. He explained, "I was diagnosed with these conditions 7–14–98. From that date to the point I stopped working I would miss quite a lot of work due to infections & flue [sic] like symp-

toms. I finally stopped working all together 10–99. I tried to keep working as long as possible to keep my insurance." Under a section of the application designated "Work Activity Report," Devine stated, "I am not working at all, because of my condition. . . . [T]he side effects & symptoms of my infections continue to prevent me from working." These statements conflict with Devine's claim that he is a qualified individual with a disability under the ADA, because Devine could not be both unable to work and capable of performing the essential duties of a jail officer. *See Lee*, 259 F.3d at 674.

Devine must therefore adequately explain the conflict between his two positions or his ADA claim is foreclosed. *See id.* When presented at his deposition with his statements to the Social Security Administration, Devine agreed that he was unable to work as of October 8, 1999, if not earlier. He explained that, as of the date of his termination, he had missed a substantial amount of work because of his illness and was often so sick that he "couldn't get up off the floor." According to Devine's deposition testimony, bouts of nausea and chronic diarrhea prevented him from working at all, unless he could find a job that would allow him to "sit in a bathroom all day."

Devine now attempts to reconcile his statements by arguing that, despite his statements to the Social Security Administration, he *could* work as of the date he was terminated. In support he points out that he was working as a jail officer when he was fired and, except for a number of absences, was performing the job well. But Devine's explanation misses the point of the judicial estoppel doctrine. Devine, like the plaintiff in *Lee*, "made a knowing decision upon his discharge to apply for disability benefits on the theory that he could not do the work." *See Lee*, 259 F.3d

at 677. Although he applied for benefits several months after his termination, he made a sworn statement in his application that he was unable to work as of October 8, 1999. He may not now argue that he could in fact work as of that date, which would render false his statements to the Social Security Administration. *See Lee,* 259 F.3d at 677; *Holtzclaw v. DSC Comm. Corp.,* 255 F.3d 254, 258–59 (5th Cir.2001). Indeed, the record suggests that Devine was truthful on his disability application and that he is a gravely ill man, one who continued working long past the point that others might have quit. Although we are not unsympathetic to Devine's difficult situation, he has not offered a sufficient explanation of the inconsistent positions taken in his claim for disability benefits and his ADA lawsuit. Accordingly, summary judgment on his ADA claim was proper.

### B. Devine's First Amendment Claim

■ As an alternative to his ADA claim, Devine asserts that the County Board fired him for revealing the latex glove story to the news media. He argues that the sheriff was angry with him for telling Mann that he contracted AIDS because of jail officials' negligence and fired him in retaliation. To evaluate a public employee's First Amendment retaliation claim, we must consider three issues: (1) whether the employee's speech is constitutionally protected; (2) whether the employee's speech motivated the defendants' actions; and (3) whether the defendants can show that they would have taken the same action regardless of the employee's speech. *Vukadinovich,* 278 F.3d at 698. If the defendants carry their burden on the third element, the employee must show that the defendants' proffered reason for the termination was pretext for unlawful retaliation. *Id.* at 699.

Assuming for argument that Devine could satisfy the first two elements of the test (a proposition on which we express no opinion), the County Board asserts that Devine was fired, not because he spoke to a reporter, but because he disclosed confidential inmate medical records. Devine does not disagree that the County Board's reason constitutes an adequate justification, but instead counters that his release of the records was not the *real* reason the Board fired him. In support, Devine points to the sheriff's treatment of another jail guard, Rob Yarger, who he asserts also revealed information to the media but was not fired.

The sheriff's treatment of Yarger does not help Devine show that the sheriff's reason for terminating him was pretext. The record shows that Yarger met with the same reporter but, unlike Devine, did not actually disclose any confidential inmate medical records. Yarger met with Mann shortly after Devine's own interview to corroborate Devine's assertions about how he might have contracted AIDS. Yarger was present during the 1993 incident with the inmate and could also attest to the lack of gloves in the jail at that time. Yarger brought with him to the interview a number of the same documents that Devine had already given to Mann. Yarger offered the documents to Mann, but Mann did not want them. According to Yarger's deposition testimony, he never actually showed Mann the documents but merely held them up during the interview with their backs facing Mann.

Devine believes that the sheriff was unfair to treat him more harshly than Yarger, arguing that the difference in their actions was due only to Mann's fortuitous decision not to accept Yarger's documents. But an employer's reasons for taking an adverse employment action may be "mistaken, ill-considered, or foolish"; we will

not presume pretext so long as the employer's reasons were honestly held. *See Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir.2000); *Willis v. Marion County Auditor's Off.*, 118 F.3d 542, 548 (7th Cir.1997). The differing treatment of Yarger, who did not disclose confidential records, does not help Devine discredit the sheriff's proffered reason for his own termination.

Without a comparison to Yarger, Devine is left to rely on the timing of his discharge and his own suppositions about the "reactive heat" he caused in county government by airing the latex glove story. We have observed that timing alone cannot establish pretext, *see, e.g., Pugh v. City of Attica*, 259 F.3d 619, 628–29 (7th Cir.2001), and timing is particularly unhelpful in this case, because the parties both point to the meeting with Mann as the basis for Devine's termination. In support of his "reactive heat" argument, Devine cites several facts, including that an unnamed "high elected official" in county government tipped off Mann about the two-year-old state audit: that the sheriff knew Devine was alleging that he had contracted AIDS because of the county's negligence; and that another county official expressed anger when contacted by Mann about Devine's allegations. Even assuming that these facts are true, Devine has offered no basis for concluding that the sheriff rather than some other official tipped off the reporter, or that the sheriff's decision to terminate him was motivated by anger over the latex glove story. Devine's own subjective beliefs about the reasons for his termination are not sufficient to establish pretext. *See Vukadinovich*, 278 F.3d at 700; *Jordan*, 205 F.3d at 344 n. 9. Because Devine has not shown that the County Board's proffered justification for terminating him was pretext for unlawful retali-ation, summary judgment on his First Amendment claim was proper.

## III. CONCLUSION

For all of the foregoing reasons, the judgment of the district court is AFFIRMED.