UNPUBLISHED ORDER
Not to be cited per Circuit Rule

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued December 3, 2004
Decided May 31, 2005

**Before**

Hon. JOEL M. FLAUM, *Chief Judge*

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 03-4183

| | |
|---|---|
| WILLIETTE MASON, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of |
| v. | Indiana, Hammond Division. |
| | |
| NORTHERN INDIANA PUBLIC | No.  01 CV 362 |
| SERVICE COMPANY, | |
| *Defendant-Appellee.* | Andrew P. Rodovich, |
| | *Magistrate Judge.* |

**O R D E R**

Appellant Williette Mason sued her former employer, Northern Indiana Public Service Company ("Nipsco"), alleging discrimination pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 *et seq.* The district court granted summary judgment in favor of Nipsco, and we affirm the finding that defendant's legitimate, non-discriminatory reasons for not offering Mason the position of Accounts Payable Clerk were not pretextual.

## I.  BACKGROUND

Williette Mason was initially hired by Nipsco in 1989 as a temporary clerk and was later hired as a regular employee in 1990, working in a variety of clerical positions.   Mason first began experiencing pain in her elbow, wrist and shoulder in June 1998 when she was temporarily working as a Mail Processing Cash Clerk. The pain persisted through early 1999, so Mason sought medical attention and was diagnosed with "mild right lateral epicondylitis" by Dr. Ralph Richter, a hand specialist. She returned to work with a physical restriction from any job that involved rapid or repetitive motion or heavy lifting.

During April and May 1999, Mason's physicians, Dr. Mohamahad Turkmani and Dr. Marc Levin, diagnosed her with right arm radiculopathy, cervical muscle spasm, strain and cervical radiculopathy.  Subsequent to these diagnoses, in August 1999, Mason was given the position of Micrographics Archive Clerk ("Archives Clerk"), where her primary duty was to remove heavy-duty staples.  This job aggravated her condition and Mason revisited Dr. Levin, who then further restricted Mason to lifting only 10 to 20 pounds.

In light of her additional restriction and in order to enable Mason to perform the essential functions of the Archive Clerk position, Nipsco made a number of accommodations, including (1) allowing Mason to work at her own pace; (2) allowing Mason to take additional break time during the workday at her discretion; and (3) providing a special chair for Mason to use while at work.

Despite these accommodations, Mason again complained of pain and took sick leave in January 2000, seeking further medical attention from Dr. Nancy Trimboli, a chiropractor.  Dr. Trimboli diagnosed her with "advanced cervical disc degeneration with nerve root compression."  Three months later, in March 2000, Mason sought treatment from Dr. Antonela Svetic, who diagnosed Mason with "myofascial neck and thoracic pain." Neither Dr. Trimboli nor Dr. Svetic provided a definite return-to-work date; Dr. Trimboli provided a "possible" return-to-work date of April 15, 2000, and Dr. Svetic advised Mason to return only if the job was a "light duty job avoiding repetitive arm movements."

While Mason was on medical leave, a position as an Accounts Payable Clerk opened up in March 2000.  Under the terms of the Steelworkers Local 13796 union contract,  Mason had first priority to the position given her seniority and because she had previously been "bumped" out of a similar open position in 1993.  It was unclear, however, whether Mason could perform as an Accounts Payable Clerk.

To determine whether Mason could fulfill the essential functions of the

position, Nipsco: (1) conducted an analysis of the requirements of the Accounts Payable Clerk position and concluded that the position required 4 hours of steady data entry, 2 hours of writing, stapling, and 1.5 hours organizing work, making phone calls, and filing daily; (2) consulted and evaluated the various medical restrictions Mason's physicians had imposed; and (3) compared Mason's restrictions with the essential functions listed in the"Physical Capacity Requirements of Essential Job Functions of Accounts Payable Clerk" form.

According to Nipsco, the essential functions of an Accounts Payable Clerk required a full work day of "use of hands to grasp, handle or feel" as well as continuous "reaching with hands and arms."  Nipsco, however, found it difficult to reconcile this requirement of the job with Mason's physical restrictions.  Specifically, in evaluating Mason's medical restrictions, Nipsco was unclear whether the restrictions on repetitive movements encompassed the repetitive movements inherently associated with typing and computer usage.  In addition, although Drs. Svetic and Trimboli both prohibited Mason from engaging in repetitive movements, one doctor stated that the restriction was permanent while the other stated that the restrictions were "most likely not permanent."

When Nipsco pressed Mason's physicians for additional detail and clarification, Dr. Svetic stated that Mason could use a computer keyboard but that she should continue to "perform light duties which means she should avoid repetitive movements, carrying heavy objects, and using a heavy-duty staple remover." Dr. Trimboli restricted Mason to "no lifting or pulling staples."  According to Nipsco, these additional details still failed to clear up Nipsco's confusion regarding whether Mason could perform the essential duties of the Accounts Payable Clerk that included the repetition involved in typing and using a computer.  Finally, Nipsco presented both doctors with a detailed description of the physical duties required of the Accounts Payable position and asked both to indicate whether Mason could perform the specific duties.  By this time both doctors responded that Mason could perform the essential duties of the position, Nipsco had already independently concluded that, given the repetitive nature of the work, Mason would be unable to perform the essential functions involved in the job and subsequently filled the position.

## II.  ANALYSIS

We review *de novo* a district court's grant of summary judgment. *Kupstas v. City of Greenwood*, 398 F.3d 609, 611 (7th Cir. 2005).  Claims of discrimination under the ADA can be proven through either direct or indirect evidence.  *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001).  Given that Mason does not provide any direct evidence of disability discrimination, she must proceed under the

indirect burden-shifting method.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Pugh*, 259 F.3d at 625-26.

Mason alleges that Nipsco failed to make reasonable accommodations for her known physical limitations, and instead gave the open Accounts Payable position to another applicant.  To state a prima facie case of failure to accommodate a disability under the ADA, Mason must show: (1) she was or is disabled; (2) Nipsco was aware of her disability; (3) she was otherwise qualified for her job; and (4) the disability caused the adverse employment action.  *See Dvorak v. Mostardi Platt Assocs.*, 289 F.3d 479, 483 (7th Cir. 2002); *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1284 (7th Cir. 1996).  Once Mason has established a prima facie case, the burden of production shifts to Nipsco to provide a legitimate, non-discriminatory reason for Mason's adverse employment action.  *Dyrek v. Garvey*, 334 F.3d 590, 598 (7th Cir. 2003); *Silk v City of Chicago*, 194 F.3d 788, 799 (7th Cir. 1999).  Once Nipsco satisfies its burden, the burden shifts back to Mason to show that Nipsco's explanation was pretextual.  *Dyrek*, 334 F.3d at 598; *Silk*, 194 F.3d at 799.

The district court properly determined that there was sufficient evidence in the record to establish a prima facie case of discrimination under the ADA, precluding summary judgment.  Turning then to Nipsco's legitimate, non-discriminatory reasons for denying Mason the position, Nipsco explains that it did not immediately offer the position to Mason when it became available because Nipsco was unable to determine whether Mason could perform the essential functions of the position due to her ambiguous physical restrictions.  As a result, Nipsco felt it needed to consult with her physicians further and clarify the extent of her physical restrictions.  Before Nipsco could fully clarify whether Mason could perform the essential functions of the position, howeer, Nipsco decided to fill the Accounts Payable Clerk position with a second viable candidate.

In response, Mason simply disagrees with the conclusions made and the methodology used by Nipsco, but offers no evidence that indicates Nipsco lied or acted with discriminatory animus.  Specifically,  Mason presents no evidence that Nipsco acted dishonestly in assessing the essential functions of the position or in seeking further clarification from her physicians.  The fact that Mason disagrees with Nipsco's description of the Accounts Payable Clerk position does not by itself establish that Nipsco's proffered reasons are a pretext.

Pretext requires more than a showing that the decision was "mistaken, ill considered or foolish."  *Jones v. Union Pac. R.R.*, 302 F.3d 735, 743 (7th Cir. 2002) (quoting *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000)).  "[S]o long as [the employer] honestly believes [its proffered] reasons, pretext has not been shown."

*Jordan,* 205 F.3d at 343*.* Moreover, federal courts do not sit as a "super-personnel department that reexamines an entity's business decision and reviews the propriety of the decision." *Nawrot v. CPC Int'l,* 277 F.3d 896, 906 (7th Cir. 2002) (citing *Stewart v. Henderson,* 207 F.3d 374, 378 (7th Cir. 2000); *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir. 1986)). In order to establish pretext, therefore, a plaintiff must show that the employer's proffered explanation is factually baseless, not the actual motivation for the decision, or insufficient to support the decision. *Dyrek,* 334 F.3d at 598. Ultimately the question is not whether the employer's decision was correct, but rather whether the employer's explanations for its decision are honest. *Dvorak,* 289 F.3d at 487.

Here, Mason has failed to show that Nipsco's proffered legitimate, non-discriminatory reasons for not offering her the position of Accounts Payable Clerk are false or dishonest. Mason cannot carry her burden of showing pretext by making bare allegations or by merely disagreeing with Nipsco's analysis and final decision. Under the ADA, Nipsco is not required to hold a pool of jobs open, to create a new position in anticipation of or in response to Mason's return, or to "bump" other employees to create a vacancy for Mason. *See Watson v. Lithonia Lighting,* 304 F.3d 749, 752 (7th Cir. 2002); *Gile v. United Airlines, Inc.,* 95 F.3d 492, 499 (7th Cir. 1996). Since Mason has failed to rebut Nipsco's legitimate, non-discriminatory reasons for not offering her the Accounts Payable Clerk position, summary judgment in favor of Nipsco was appropriate.

## III.  CONCLUSION

For the reasons stated above, we AFFIRM the district court's grant of summary judgment in favor of the defendant, Northern Indiana Public Service Company.