<div style="border:1px solid">

**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

</div>

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 23, 2018[*]
Decided March 26, 2018

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 16-2898

| | |
|---|---|
| FRANKIE N. WALKER, SR., | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| | |
| *v.* | No. 13-CV-3358 |
| | |
| JAMES C. CLAYTON, et al., | Colin S. Bruce, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Frankie Walker is a civil detainee at Rushville Treatment and Detention Facility. Rushville officials restricted his access to the general population for nine days while the police investigated whether he had tampered with a witness. In this civil-rights suit Walker asserts that, in restricting him, Rushville retaliated against him for his past litigation and denied him liberty without due process. He also contends that two staff

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

members later ordered a search of his room in retaliation for litigation. The district court entered summary judgment in favor of the defendants, and we affirm. Rushville's belief that Walker had tampered with a witness was sincere and justified the brief assignment to restricted status to facilitate an investigation; the assignment was not punitive, so it did not deny Walker liberty; and no evidence supports the assertion that the search of Walker's room was retaliatory. Walker also challenges some procedural rulings, but those arguments are baseless.

This case begins with a document that Walker wrote for Troy Curtner, a fellow resident. Curtner had been attacked by a Rushville detainee and was scheduled to testify against that detainee in a criminal prosecution. While helping Curtner prepare a related civil suit against Rushville, Walker also drafted a document that Curtner signed stating that he would no longer testify or otherwise participate in prosecuting his attacker. The document was intercepted in October 2011 by Chris Clayton, a Rushville investigator, who suspected that Curtner did not compose it himself.

Clayton reports that he interviewed Curtner who told him the following: Walker wrote the document; Walker "advised" Curtner "that it was in his best interest not to testify against the other resident"; and Walker, along with several other residents, "advised" Curtner to sign the document. Based on this interview Clayton believed that Walker and the other residents had tampered with Curtner. He called the Illinois State Police to investigate possible witness tampering. Curtner later told the district court that Walker did not intimidate or tamper with him, but he did not dispute Clayton's description of the interview.

During the police investigation, Rushville briefly placed Walker and the other residents in a unit with restricted access to the general population. The transfer facilitated the investigation into the residents' possible misconduct by isolating them until the police interviewed them. *See* ILL. ADMIN. CODE tit. 59 § 299.650(a)(3). A committee of Rushville administrators met to discuss the assignment. Walker did not attend their meeting, and to protect the integrity of the investigation the committee did not tell him why he was placed in restrictive status. Walker remained there until the police investigation ended nine days later. During those nine days, a police investigator read the document and interviewed Curtner. He determined that Curtner had not been tampered with and, after consulting the State's Attorney, told Clayton that the police would not pursue charges against Walker. The next day, Rushville told Walker about the investigation, that it was over, and that he was released from restricted status. Suspecting that no investigation had ever occurred, Walker asked the police (using

Illinois's Freedom of Information Act) for documents about the "criminal investigation of Frankie N. Walker." No "Walker" documents turned up; the investigation's documents were filed under "Curtner," and they were eventually produced.

The next relevant event occurred two years later. Walker was in his unit's common area in August 2013 preparing this suit against Clayton for placing him on restrictive status. Clayton, Ryan Kerr (a security aide), and two other aides arrived to search a neighboring room. Clayton saw Walker's civil complaint, glanced inside Walker's room, and briefly blocked Walker's entry to it, prompting Walker to believe that Clayton was harassing him. When the search of the neighboring room ended, Clayton, Kerr, and the aides left. Two other aides arrived ten minutes later and searched Walker's room. As the search began, Kerr returned. Walker asked the reason for the search, and Kerr said that it was random, which Walker replied he doubted.

Walker has sued under 42 U.S.C. § 1983, claiming that Clayton and other staff unlawfully placed him on restricted status and that Clayton and Kerr unlawfully ordered the search of his room. They did so, he contends, to retaliate against him for assisting with and filing lawsuits, in violation of the First Amendment and due process. Walker also added a civil-conspiracy claim and a supplemental state-law claim for intentional infliction of emotional distress. The district court eventually entered summary judgment in favor of all defendants, reasoning that they had behaved lawfully.

We begin with Walker's principal claim: that Clayton and Rushville officials put him on restricted status in retaliation for his First Amendment activity of litigating. To survive summary judgment, Walker must produce sufficient evidence to persuade a rational factfinder that the defendants' explanation for his changed status—the witness-tampering investigation—is pretextual and that the true reason was retaliatory. *See Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006). The undisputed evidence is that, based on Clayton's interview, the defendants genuinely believed that Walker had tampered with Curtner and that they needed to isolate him briefly to facilitate a police investigation of the matter. A sincere belief in a legitimate reason for adverse action (in this case, restricted status to facilitate the investigation) defeats a claim of retaliation. *See Burks v. Wisc. Dep't of Transp.*, 464 F.3d 744, 754 (7th Cir. 2006); *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000).

Walker replies with two arguments that are unpersuasive. First he contends that, because the police investigator later determined that Clayton's belief about tampering was unfounded, the belief was not genuine. But an unfounded belief is not the same as

an insincere one. *See Jordan*, 205 F.3d at 344 ("Pretext is a lie, not merely a mistake."); *see also Massey*, 457 F.3d at 719 (plaintiff's after-the-fact explanation did not undermine sincerity of defendant's previous belief). Walker is left with only speculation that Clayton did not believe that Walker had tampered with Curtner. (He also speculates that the absence of police reports under "Walker" means that the later-produced reports under "Curtner" are fabricated.) But speculation is not evidence. *See Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013) (speculation cannot overcome contrary evidence of defendant's benign motive); *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (speculating witnesses are lying does not create genuine issue of material fact). Finally Walker observes that Rushville never conducted an internal investigation, but this is not evidence of insincerity because Clayton had turned the matter over to the police.

We next address the due-process claim. The district court was correct that no reasonable jury could conclude that Walker's transfer to restricted status violated due process. No deprivation of liberty occurs when a restriction is imposed for managerial, nonpunitive reasons. *See Bell v. Wolfish*, 441 U.S. 520, 535–39 (1979); *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002). Walker's changed status was not punitive. He was briefly separated from the general population to facilitate a police investigation.

We turn now to Walker's claims that Clayton and Kerr retaliated against him for his litigation activities by ordering his room searched in August 2013. Walker has supplied no evidence that Kerr even knew that Walker was preparing this or any other lawsuit. Without that knowledge, the timing of the search is not sufficient for a factfinder to infer that Walker's litigation motivated Kerr to initiate a search. *Cf. Pugh v. City of Attica*, 259 F.3d 619, 630 (7th Cir. 2001) (deciding that timing, without evidence discharge was retaliatory, was insufficient to establish protected activity as motivating factor). And there is no evidence that Kerr ordered the search. Nor is there sufficient evidence to present to a jury the claim against Clayton. True, Clayton may have known about Walker's civil complaint against him. But Clayton was not present for the search, and Walker has offered no evidence that he ordered, instigated, or even knew about it in advance. Without evidence of his involvement, a factfinder could not reasonably conclude that Clayton is culpably responsible for the search. *Cf. Massey*, 457 F.3d at 717 (observing that it is plaintiff's burden to persuade factfinder that defendant's proffered reason is pretextual and true reason is retaliatory).

The district court correctly entered judgment on the remaining claims. In the absence of any constitutional violations, Walker cannot prove a conspiracy to commit such a violation. *See Hurt v. Wise*, 880 F.3d 831, 842 (7th Cir. 2018); *Sow v. Fortville Police*

*Dep't*, 636 F.3d 293, 305 (7th Cir. 2011). Nor has Walker presented a triable case that the defendants intentionally inflicted emotional distress. No reasonable jury could find from this record that restricted status for nine days pending a police investigation or a search of Walker's room was "[e]xtreme and outrageous conduct" going "beyond all bounds of decency." *Lopez v. City of Chicago*, 464 F.3d 711, 720 (7th Cir. 2006).

We conclude by addressing Walker's procedural challenges. First, he argues that the district court should have disqualified the Illinois Attorney General from acting as defense counsel because the Attorney General's office also administers Walker's detention. But the dual capacities present no ethical conflict, and the Attorney General is authorized to represent state employees in civil proceedings arising out of their employment, 5 ILCS 350/2(a). So it was not an abuse of discretion for the district court to deny Walker's motion. Walker next argues that the district court should have sanctioned the defendants for responding late to some interrogatories. The defendants explained that they accidentally had overlooked the requests when their case was assigned to a new attorney. The district court could permissibly accept that explanation, given that the interrogatories eventually were answered at no prejudice to Walker. *Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013). Finally, Walker appeals the district court's refusal to compel responses to interrogatories that the court ruled were argumentative, already answered, or irrelevant. Walker's perfunctory argument that this ruling was wrong is insufficient to establish any abuse of discretion or prejudice. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 679 (7th Cir. 2002).

Accordingly, the district court judgment is AFFIRMED.